STATE *v.* HENRY BABCOCK ; AND HENRY BABCOCK *v.*
JAMES BARRETT.

*Practice.    Gen. Sts. c.* 113, *s.* 5.    *Mandamus.    Exceptions.*

A witness testified to certain facts as of her own knowledge, both counsel and court
supposing her so to know them.  The cross-examination disclosed that her testi-
mony was hearsay.  Counsel for the party for whom she was a witness told the jury
that her testimony was withdrawn from their consideration, and the court assented,
saying that the testimony was " of no account."  The other party on cross-examin-
ation admitted the fact to which she testified.  *Held,* no error, and that if there was
error, it would not be revisable, as the other party was not thereby prejudiced.

On trial on indictment on s. 5, c. 113, Gen. Sts., charging respondent with burning his
own building with intent to defraud an insurance company, it appeared that the
building was only partially destroyed, but that respondent claimed payment of the
company for the damage thereby done.  *Held,* that the building was burned, within
the meaning of the statute.

A petition for *mandamus* is addressed to the discretion of the court, and the writ will
not issue if the right be doubtful.  Thus; after the jury had left the jury-box, coun-
sel for respondent stated to the court that they took exception to the charge.  The
presiding judge replied that they were too late.  After verdict the presiding judge
informed counsel that " the exceptions they had in mind would be allowed," sup-
posing they had in mind exceptions whereof he had had intimation.  When the ex-
ceptions were drawn and presented for allowance, the judge refused to allow them,
for that no such exceptions were noted or brought to the attention of the court un-
til after verdict and separation of the jury.  Counsel claimed that they *had in mind*
the exceptions that were so drawn up and presented, and filed a petition for *manda-
mus* to compel their allowance.  *Held,* that if the judge so promised, it could not
be inferred that he bound himself to allow any exceptions that counsel might pre-
sent, but, at most, only such as by the course of the trial he had reason to suppose they
had in mind; but that if he in fact promised to allow the exceptions presented, and
they related to parts of the charge that he thought not misleading, then, as the or-
der and course of the trial rested with him, his failure to allow them would not be a
failure to discharge a duty for which *mandamus* would lie.

Nor will *mandamus* issue when it would be unavailing.  Thus; in that part of the
charge to which exception was sought, the court charged that there was a statute
making it criminal for a person to " set fire " to his own building with intent, &c.;
that the indictment was under that statute; that although the fire did not burn the
building all up, it burned and burned up, within the meaning of the statute," so that
if the respondent caused the burning, he was guilty under the statute; that the fact
that the burning was not more extensive made no difference; that the object of the
statute was to prevent the setting of fires, and the burning of buildings, with said
intent; and that the crime consisted in " setting the building on fire so that it
burned."  *Held,* that although the court used the expression, " set fire to," instead
of the word " burn," and although " set fire to" was the form of expression used in

section 3 of the same chapter, that part of the charge, taken all together, could not have misled, and contained no revisable error, and that therefore *mandamus* would not issue.

THIS was an indictment charging the respondent with burning his own cider-mill in Pomfret, with intent to defraud the Windsor County Mutual Fire Insurance Company, in which said buildings were insured. Plea, not guilty, and trial by jury, December Term, 1878, BARRETT, J., presiding. There was also, besides the exceptions taken and allowed on this trial, a petition on the part of the respondent to compel the judge who presided at that trial to allow and certify certain other exceptions; and exceptions and petition were had together.

It appears that the fire was set on June 18, 1878, on the upper floor of the building near the roof, by means of a barrel containing a quantity of shavings, and a lighted candle so placed as to ignite the shavings as it burned down; that the fire was discovered about noon, and extinguished after the building had been damaged to the amount of from ten to twenty-five dollars, for which the respondent claimed $10 of said company.

It appears that the insurance covered certain property in said building, including a carriage, which was insured for $100. The prosecution contended that the property was over insured; and upon that question introduced Matilda Mitchell, who testified that the respondent bought the carriage of her husband ten or twelve years before, and gave his note for $80. It was supposed by the court and counsel when she testified that she testified of her own knowledge, but it was disclosed by the latter part of the cross-examination that although she saw the note, she was informed of the trade with the respondent by her husband, who had since died, and that she did not know except by being told by her husband that the note was given for the carriage. The testimony was objected to, for that what the respondent paid for the carriage was not a fair criterion of its value; but the objection was overruled and the testimony admitted; to which the respondent excepted. No objection was taken because the testimony was hearsay. After the evidence was closed, the State's attorney in opening stated to the court and the jury that Mrs. Mitchell's testimony was with-

drawn because it was hearsay and should receive no consideration, and the court assented, saying that it was " of no account in the case;" and should not be considered by the jury. No further remark was made about it by either counsel or court, and the respondent made no request of the court to charge in regard to it. The respondent testified on cross-examination that he paid Mitchell $80 for the carriage.

The respondent moved the court to direct a verdict for him, for that the evidence on the part of the prosecution tended to show only an attempt to set fire, &c. But the court overruled the motion, and ruled that the burning testified to by the witnesses for the prosecution was sufficient to constitute the crime charged, if done with the specified intent; to which the respondent excepted. The court also charged to the same effect; to which the respondent also excepted after the jury had retired from the jury-box.

The facts relative to the matter of the petition appear from the opinion of the court.

*John M. Shirley*, for the respondent and petitioner.

The error of the admission of Mrs. Mitchell's testimony was not cured by the attempted withdrawal of it from the jury. *Sterling* v. *Sterling*, 41 Vt. 80 ; *Wood* v. *Willard*, 36 Vt. 82 ; *Conn. & Pass. Rivers Railroad Co.* v. *Baxter*, 32 Vt. 805, 814 ; *State* v. *Hopkins*, 50 Vt. 316. That part of the charge relating to the statute was erroneous. Gen. Sts. c. 113, ss. 3, 5.

This court has power to grant the writ. It is its duty to keep inferior tribunals in order. Gen. Sts. c. 30, s. 11 ; *Woodstock* v. *Gallup*, 28 Vt. 587, 591 ; *Insurance Co.* v. *Wilson*, 8 Pet. 304, and other cases. The writ should be issued on the facts. The charge was clearly wrong. The indictment was on s. 5, c. 113, Gen. Sts. The charge was under s. 3. The offenses discribed in those sections are distinctly unlike. It does not cure the error that a later part of the charge upon that point was correct. *Alexander* v. *Blodgett*, 44 Vt. 476, 480.

*Gilbert A. Davis*, State's Attorney, for the State and the petitionee.

There was no error in admitting the testimony of Mrs. Mitchell. Besides, the respondent was not prejudiced by its admission. He admitted what she testified to. *Weeks* v. *Barron*, 38 Vt. 420. The actual burning of part of the building was not denied. That was enough. 4 Bl. Com. 222 ; *Regina* v. *Parker*, 9 C. & P. 45, and other cases.

The writ of mandamus should not be issued in case of doubtful right. *Free Press Association* v. *Nichols*, 45 Vt. 7 ; *Sabin* v. *Rounds*, 50 Vt. 74, and other cases. Nor should it be issued where it would be unavailing. High Ex. Rem. s. 14, and cases cited ; *Hall* v. *Crossman*, 27 Vt. 297 ; *Williams* v. *County Commissioners*, 35 Me. 345. Nor to compel an inferior tribunal to do a discretionary act. High Ex. Rem. s. 24. The act sought to be compelled was discretionary. *Williams* v. *Heywood*, 41 Vt. 279. The respondent's exceptions were too late. *State* v. *Clark*, 37 Vt. 471 ; *Goodwin* v. *Perkins*, 39 Vt. 598 The judge was bound to certify no other point. *Steele* v. *Bates*, 2 Aik. 338 ; *Buck* v. *Squires*, 23 Vt. 498 ; *Williams* v. *Heywood*, *supra*. But there was no error in that part of the charge sought to have certified, taken as a whole. *Ross* v. *Bank of Burlington*, 1 Aik. 43 ; *Brackett* v. *Wait*, 6 Vt. 411 ; *Fletcher* v. *Cole*, 26 Vt. 170 ; *Jackman* v. *Bowker*, 4 Met. 235. Had the exceptions been seasonably taken, counsel should have specified the points of exception. *Goodwin* v. *Perkins*, *supra*.

The opinion of the court was delivered by

REDFIELD, J. The respondent is indicted for burning his own building, with intent to defraud the insurance company. Mrs. Mitchell was improved as a witness, to establish the fact that some part of the property was insured for more than its value, and more than it cost the respondent ; and she so testified ; but in cross-examination she disclosed that she did not, personally, know the fact ; and that she only saw the note which her husband said was given for the carriage, at the price of $80. The court told the jury that her testimony " was of no account " ; and the State's attorney informed the jury that such testimony was wholly withdrawn from their consideration. All parties concerned in the trial

supposed that the witness *knew* whereof she testified, until near the close of the cross-examination ; and the court did all a court could do, by discharging the witness, and informing the jury that her testimony was " of no account." It was no fault of the State's attorney, for he had a right to suppose that the witness *knew* what she assumed to know. And the witness (like other women) supposed that what her husband or other credible person told her was a fact, was so. All persons are made witnesses —" Jews, Turks, and infidels." They speak in every language ; some stammer and stutter, and communicate their knowledge in fragments ; some, from stupidity and ignorance, assume to know what, by legal rules of evidence, they do not know. Some attempt in broken English, or by signs, to make statements which neither court nor counsel nor jury can comprehend. If, in this confusion of tongues, imperfect statements, and opaque ideas, it should be finally disclosed that a witness had been stating as facts matters of which he had no legal knowledge, a court must discharge the jury and begin the case *de novo*, then trial by jury would become impracticable.

The court committed no error, because he supposed, and had the right to suppose, the witness was speaking of matters within her own knowledge ; and counsel did not except till the testimony was in the case, because they were in like ignorance.

The respondent was not prejudiced, because he admitted on the stand that what the witness attempted to state as a fact, was true.

This exception cannot prevail.

The court charged the jury that the burning shown by the testimony, if believed, constituted the offence, within the meaning of the statute ; to which the respondent excepted ; but this exception has not been pressed in argument by the respondent's counsel ; and we understand it is waived. Certainly, we think the exception cannot be sustained. The building insured was partially destroyed ; and the respondent claimed payment for the damage caused by such fire. His criminal purpose had become so far executed that the mischief against which the statute is aimed, was perpetrated, but to less extent than he purposed, by

reason of the extinguishment of the fire, and the discovery of his crime.

The respondent asks this court, by the writ of mandamus, to compel the presiding judge to allow, sign, and certify certain other exceptions.

This petition is addressed to the sound, judicial discretion of the Supreme Court. The writ will never be allowed if the *right* be doubtful. High on Ex. Rem. ss. 9, 10, 14 ; *Free Press Asso.* v. *Nichols*, 45 Vt. 7.

Their exceptions to the charge were not taken, or attempted, until after the jury had left their seats, and retired from their box. And when attempted, counsel were informed that " they were too late." In this the court were but enforcing an express rule of court, and within the general practice in this State.

After the verdict was rendered, the presiding judge informed the counsel that " the exceptions they had *in mind* would be allowed." But when these exceptions were actually written out and presented to the judge for allowance, he refused to allow them, for the reason that no such exceptions had been taken, or noted, nor brought to the attention of the court, until the verdict had been rendered, and the jury separated. Counsel say they had " in mind " these exceptions, but had never intimated such to the court. The judge says he supposed they had " in mind " exceptions whereof they had made intimation, and has allowed such ; but should not have allowed these if they had been stated. If the presiding judge used the expression imputed to him, we do not think that counsel could rightfully infer that he had bound himself to allow any and all exceptions, however absurd or untrue, which counsel might present to him, and such as had never before been named. It was rather such as by the course of the trial and the objections of counsel he had reason to suppose they had " in mind," and not such as he had before expressly refused. But, if we assume that the presiding judge had expressly promised to allow *these* exceptions (a fact not claimed to have been proved), and when presented he found them to consist altogether in technical fault with the .phraseology of the charge — a matter that could be made certain in few words, and, .as he judged,

could not mislead the jury — then the judge did not fulfil his
*promise;* but he did not refuse to discharge a *duty* imposed by
law. And it is not the office of this writ to enforce *contracts.*
*Bailey* v. *Oviatt,* 46 Vt. 627. What facts occurred during the
trial, what objections to testimony, what exceptions were taken,
and the order of them, rests entirely with the judge presiding at
the trial. It would be a great perversion of the law, and, in our
view, of the proper office of this writ, to require, by mandate, of
the presiding judge to certify into this court a fact, which, on his
conscience and in his answer, he declares not to be true.

The writ will never be granted when it would have been
unavailing. High on Ex. Rem. s. 14, and cases cited. Would
these exceptions, if allowed, avail the petitioner?

Section 3, c. 113, Gen. Sts., declares it criminal in " any per-
son to *set fire* to the dwelling-house of another," &c. Section 3
of the same chapter denounces a penalty upon " every person who
shall wilfully and maliciously *burn,* or cause to be burned, his
own dwelling-house, &c., with the intent to defraud any insurance
company," &c. The court, in his charge, stated that " we have a
statute making it criminal for a person to set fire to his own build-
ings with the intent to defraud an insurance company." " The
indictment in this case is under that statute." And in that con-
nection, immediately following, the judge says, " He was insured
upon that property in this company—a fire was set in the cider-
mill building ; it took effect upon the roof, and although it did
not burn the building all up, it ' *burned,*' and burned up, within
the meaning of the statute ; so if the respondent caused that burn-
ing, then he is guilty under the statute. The fact that it did not
burn more extensively does not prevent its being the very crime the
statute prescribes. The object of the statute was to prevent the
setting of fires, and the burning of buildings, with that intent.
The crime consists in the setting the building on fire *so that it
burned.*" If we take this isolated portion of the charge, unex-
plained by the other portions, we do not see how the jury could
possibly have been misled. The judge did, to be sure, use the
expression, " set fire to," instead of " *burn,*" his own building,
and was not strictly accurate. But he, in the same connection,

defined what acts must be proved to make the respondent guilty of the crime. He must have set his own building on fire *so that it burned ;* and with the intent to defraud the insurance company. And if the jury found from the evidence that the respondent set the building on fire so that it burned to the extent the evidence tended to show, and with the criminal intent required by the statute, he was guilty of the crime defined in the statute. The language was clear, full, and definite, and such as the wayfaring man might follow, " and not err therein." And if this exception had been allowed and certified, the respondent could take nothing by it.

*The writ is denied, and the petition dismissed with costs.*