## STATE *vs.* WILLIAM LAWRENCE.

### May Term, 1898.

Present: Ross, C. J., Taft, Rowell, Munson and Thompson, JJ.

*Evidence—Offer Including Inadmissible Evidence—Rebuttal—Separation of Jury in Criminal Cases.*

The respondent, who was on trial for assault with intent to murder one from whose house he was trying to obtain his child, was permitted to show that an injunction against the respondent's interference with the child had recently been dissolved, although it was not claimed that the dissolution gave him a right to the custody of the child, who was under guardianship; thereupon the respondent offered to show remarks made by the court at the time the injunction was dissolved as tending to rebut the claim that he went to the house with the intention of committing the assault, but it was *Held, Thompson,* J., dissenting, that the offer, if admissible in part, included inadmissible matter and was properly excluded.

To rebut the claim of the respondent that the person assaulted assumed a belligerent attitude towards him immediately before the assault, it was admissible for the State to show, not only, directly, that the person assaulted did not assume such an attitude, but also that he had no intention of assaulting the respondent, for this tended to make it less probable that he would assume such an attitude.

It is no objection to evidence in rebuttal that it strengthens the opening case if it is otherwise, in its nature, rebutting.

If it does not appear that evidence admitted in rebuttal was admitted as matter of law, it will be presumed, in support of the judgment, to have been admitted as matter of discretion.

The order of trial, even in criminal cases, is matter of discretion with the trial court, subject only to the right of the accused to be afforded an opportunity to meet and answer the case made against him.

The respondent was not entitled, as matter of law, to have the verdict set aside because one juryman was separated from the others for twenty-seven minutes, by reason of illness, the trial court having found upon the testimony of the absent juryman that he had no communication with any person during the separation.

A juryman's testimony is admissible to exculpate himself and sustain the verdict.

INDICTMENT for assault with intent to murder. Trial by jury at the December Term, 1897, Windsor County, *Tyler,* J., presiding. Verdict, guilty. The respondent excepted.

The following is a verbatim copy of the offer referred to in
the opinion under point (1): "*The Court:* Mr. Enright, do
you expect to show any facts that have not been testified to
by Mrs. Lawrence? *Mr. Enright:* Only by the boy, Clifton,
about that. *The Court:* We cannot give a divorce in this
case. Assuming all Mrs. Lawrence says to be true, this was
not until after she left him. She broke up this family by
going away; we do not regard it as any excuse because she
could not get along, to break up this family and go away;
whatever he did afterwards with the child, would not justify
us in giving her a divorce; she should have stayed there and
taken care of the child. They all testify that this man did
the best he could with the means he had and she had no
reason to leave because of neglect to support. He is not a
rich man. He was evidently doing the best he could to
support the family and unless you can show the relations of
the husband and wife down to the time she left different to
what has appeared, it is only a waste of time to go on with
the case. These parties should live together and she
should go back and help take care of the child. He has done
what he could and there have been disturbances on account
of this boy; the boy is big enough to take care of himself;
he cannot agree with his father and should go and take care
of himself. But that furnishes no excuse for her breaking up
the family; she should go back home and take care of the
girl. This father is affectionate to his child and doubtless
she is also; that appeared in the jury case. These parties
should go back and live together to take care of the little
girl. We cannot break up a family on such slim evidence.
(to Mr. Lawrence) Are you willing to take your wife back
and the child? *Mr. Lawrence:* I could not do any better
than I have before; the trouble is jealousy with the children.
*The Court:* Are you willing to go and do as you have done?
*Mr. Lawrence:* Certainly. *The Court:* We do not feel justi-
fied in granting a separation here. There is no cause shown.
*Mr. Enright:* What about this child drifting about from

place to place? *The Court:* The mother should go home and take care of her child. There is no occasion for continuing the injunction on this father in regard to this child; it is an improper interference and an unwarrantable use of the powers of the Court of Chancery. Petition dismissed and injunction dissolved."

The respondent did not testify that he relied on the remarks of the court. The letter referred to in point (2) read as follows: "Having had all the notoriety that I care for and knowing that yourself Seaver Matham and Thomas are held both criminally and financially liable for what you have done I will give you just 48 hours to restore my child discharge all papers connected with her and me if it is not done there is not men nor masons on this earth to stop it till I get my just dues and 2000 dollars damages this will run till Thursday night 8." To its admission the respondent excepted on the ground that it did not suggest any idea of doing harm to Seaver, but had reference wholly to gaining his rights by legal proceedings.

*Frank Plumley* for the respondent.

The respondent's purpose and motive in being at the house of Seaver being of the utmost importance, any evidence that shed light on the actual state of his mind should have been admitted. *Hadley* v. *Carter*, 8 N. H. 40; *Com.* v. *O'Connor*, 11 Gray, 94; *Howe* v. *Howe*, 99 Mass. 88; *People* v. *Wood*, 3 Part. Cr. 681; *Com.* v. *Brady*, 7 Gray, 320.

The separation of the jury vitiated the verdict. *Com.* v. *McCaul*, 1 Va. Cas. 271, 301; *Organ* v. *State*, 26 Miss. 78; *People* v. *Backus*, 5 Cal. 275; *Overbee* v. *Com.*, 1 Robinson Va. 756; *State* v. *Sherburne*, Dudley, (Ga.) 28; *Odle* v. *State*, 6 Tenn. 159; *Woods* v. *State*, 43 Miss. 364; *Hines* v. *State*, 8 Hum. (Tenn.) 597; *State* v. *Shippy*, Brayton, Vt. 169; *State* v. *Godfrey*, Brayton, Vt. 170; 3 L. R. A. 210, 211, notes and citations.

*James G. Harvey*, State's Attorney, for the State.

THOMPSON, J. The respondent was convicted of an assault, being armed with a dangerous weapon, with intent to murder Thomas O. Seaver. At the time of the assault, Seaver was the judge of probate for the district of Hartford, and had been such judge for several years prior thereto. In September, 1895, the respondent was adjudged by Judge Seaver as probate court, to be an unsuitable person to have the care and custody of his minor child, Mabel, and one J. C. Enright was appointed her guardian. In January, 1897, Enright, by proceedings in chancery, caused the respondent to be enjoined from interfering with the person of the child, Mabel, or her care and custody by Enright as her guardian. In March, 1897, the wife of the respondent, brought her petition against him for a divorce on the ground of intolerable severity and cruel and gross neglect and refusal to support, he being of sufficient ability to support her, and prayed for the custody of the children. This petition was returned to the May term of Windsor county court for 1897, and on hearing at that term was dismissed, and the injunction against the respondent was dissolved by the chancellor at the same time the petition was dismissed, which was August 19, 1897. The assault, which was made by shooting, occurred the 22d of the same month.

The evidence on the part of the State tended to prove malice and premeditation on the part of the respondent to commit the assault, both before and at the time it was made.

The respondent was improved as a witness in defence, and his testimony tended to show that immediately after hearing the decision of the court denying the divorce, and dissolving the injunction, he made an unsuccessful attempt to obtain his child, by applying first to Miss Joy, with whom the child was boarded, and then at Judge Seaver's; that he was there informed by Judge Seaver's son that he must get the court's written order and present it to Judge Seaver if he wanted his child; that he obtained a copy of the order dissolving

the injunction, the evening of August 21st, and on the following morning came to the village after Mabel, going first to Miss Joy's and then, by her direction, to Judge Seaver's, whither the child had gone to be made ready for church by her mother, who was then in the employ of Judge Seaver as a domestic; that he was there for no other purpose and with no other thought but to get his child, and with no idea or thought that Judge Seaver would refuse him his child, and wholly without thought or purpose of doing him any harm; that Judge Seaver ordered him to leave his house, and that while he was obeying this order, Judge Seaver followed him out upon the porch, and assumed such a belligerent attitude as to put him in fear of great bodily harm, and that thereupon he shot him in self-defence.

(1) As bearing upon the claim of the respondent that he had full faith that the child would be given him on presentation of the order of the chancellor, and as corroborating his position as to his understanding that he had a right to his child, and to rebut the claim that he was at Seaver's at the time of the assault for an improper purpose, the respondent offered in evidence the remarks made by the chancellor in open court, when he made the order dissolving the injunction. The evidence tended to prove that the respondent while in Seaver's house just before the shooting, produced the order dissolving the injunction and handed it to Judge Seaver, who read it and handed it back to him with the remark that the respondent must see Enright. The court below admitted in evidence the order dissolving the injunction, but excluded the remarks of the chancellor, to which the respondent excepted. A majority of the court hold that the offer included inadmissible matter. Hence, even if it included that which was admissible, it was not error to exclude the entire offer.

(2) The letter of the respondent to Enright was admissible as it tended to show a hostile state of mind on the part of the respondent toward Judge Seaver.

(3) Judge Seaver denied having assumed a belligerent attitude toward the respondent as claimed by him in his testimony. In rebuttal it was clearly admissible to show by Judge Seaver that he had no intention of making an assault upon him, as the presence or absence of such an intent bore directly upon the probability of whether or not he assumed the attitude claimed by the respondent. That it may also have strengthened the case made by the State in opening, did not render it inadmissible in rebuttal, so long as it had a tendency to disprove the defence set up by the respondent. However, were it not strictly in rebuttal, it cannot be said that it was error to admit it at the stage of the trial when it was received, as it does not appear that it was not admitted as a matter of discretion by the trial court. The order of evidence, even in a criminal case, is a matter resting in the discretion of the trial court, provided the respondent has a fair opportunity to meet the evidence produced against him. *State* v. *Magoon*, 50 Vt. 337.

(4) While the case was on trial, the jury were kept together by the officer in charge: On a Sunday morning during the trial, he took them at their request to the morning service of the Universalist church, about forty rods distant from the hotel where they were being lodged. Near the close of the service, a juryman became suddenly ill so that it was necessary for him to leave the church, the officer consenting, supposing that he would directly return. The juryman remained a few minutes on the porch and feeling no better, walked directly back to the hotel alone and went into the water closet of the hotel. As he came out of the water closet, he met the officer with the other eleven jurors, and they went together to their rooms. After verdict and before judgment and sentence, the respondent moved to set aside the verdict because the jury were allowed to thus separate. Upon the testimony of the juror who separated from the other eleven, the trial court found that the separation continued from twenty to twenty-seven minutes, and that the

*34*

juror spoke to no person and that no person spoke to him during the separation. Upon the foregoing facts, the court below, as a matter of discretion, overruled this motion, to which ruling the respondent excepted, and he was allowed an exception, if he was entitled thereto as a matter of law. This exception cannot avail him unless as a matter of law, the separation entitled him to have the verdict set aside.

The rules which obtain in the courts of England and in the several states of this country, as to when and how far the jury in a criminal case must be kept together, and as to the effect of the separation with or without the leave of the court, are by no means uniform. In some of the states a very liberal rule is applied in all criminal cases, while in others the doctrine that the jury must be kept together in all such cases, is very strictly enforced. In others again, while the liberal rule prevails in the case of crimes not capital, the practice in capital cases is very strict. In the case of misdemeanors, it is generally conceded in England and in this country, that the courts have the same discretion as in civil cases as to permitting the jury to separate before the case is submitted to them by the charge of the court. In this state, the practice has been in cases of misdemeanors, to permit the jury, in the discretion of the court, to separate, while in the case of felonies not capital, the practice has not been uniform in respect to permitting the jury to separate after they were sworn for the case, when the respondent consented to such separation. In capital cases, no separation has been allowed. The crime with which the respondent is charged is a felony by statute but not capital. V. S. §§ 5166, 4918. In such a case, under the circumstances disclosed in the case at bar, the better rule, supported by the weight of reason and authority, is that where the separation consists of the temporary absence of a single juror, it will be no ground for setting aside the verdict and granting a new trial, unless there are other circumstances of misconduct or abuse. The conduct of such a juror should be scrutinized

with care, and if anything is disclosed showing a reasonable cause to believe that the separation of the jury has given rise to any improper practice or prejudicial misconduct, the verdict should be set aside. 2 Thomp. on Trials, § 2549 and notes thereto; Proffatt on Jury Trial, §§ 394, 395; note to *McKinney* v. *People*, 43 Am. Dec. 75-87; note to *Hilton* v. *Southwick*, 35 Am. Dec. 258; 1 Bish. Cr. Prac. (1st ed.) §§ 824, 825 and notes, and note 6 to § 823; *Com.* v. *Costello*, 128 Mass. 88; *People* v. *Douglass*, 4 Cowen 26: 15 Am. Dec. 332; *State* v. *Camp*, 23 Vt. 551; *Downer* v. *Baxter*, 30 Vt. 467; *State* v. *Cucuel*, 31 N. J. L. 249.

It is not necessary to decide whether the court has the discretionary power in criminal trials for felonies not capital, to permit the jury to separate before the case is submitted to them.

It is urged that the fact that the respondent was not prejudiced by the separation of the jury cannot be shown by the testimony of the juror in fault. The rule in this State is that the testimony of jurors may be received to exculpate themselves and sustain their verdict. *Downer* v. *Baxter*, 30 Vt. 475; *Clement* v. *Spear*, 56 Vt. 403; *Tarbell* v. *Tarbell*, 60 Vt. 486; 2 Thomp. on Trials, § 2623; *State* v. *Cucuel*, 31 N. J. L. 249. No exception was taken below to the admission of this testimony. The trial court having found that the respondent was not injured nor in any way prejudiced by the separation of the juror from the other members of the panel, the respondent was not entitled as a matter of law to have the verdict set aside. The court in its discretion might have set it aside, but under the facts found, the exercise of its discretion in denying the motion, was final, and no exception thereto can avail the respondent.

*Judgment of guilty upon the verdict. Let sentence be pronounced and execution thereof be done.*

*Thompson,* J., dissenting as to point (1).

The dissolution of the injunction did not give the respondent the right to the custody of his child nor affect Enright's

rights as her guardian under the decree of the probate court.

If the respondent at the time he went to Judge Seaver's on the occasion of the assault, believed that his child would be given to him on presentation of the order of the chancellor dissolving the injunction, the fact that he honestly entertained such belief would have a tendency to rebut the claim of the State that he went there with a malicious and premeditated purpose of shooting and killing Judge Seaver. Unless he understood that the order gave him the right to the possession of the child, there is no claim that he could have understood and believed that the child would then be surrendered to him. The testimony of the respondent tended to prove that he understood and believed such to be the effect of the order, but it does not disclose how he came to entertain such understanding and belief, except what he states was said to him by Judge Seaver's son about getting a copy of the order. Nothing in the order itself disclosed that such was its effect, and such was not its legal effect. Anything that had come to his knowledge prior to the shooting, likely to cause such an understanding on his part, bore directly upon the probability of whether he in fact understood the effect of the order to be as he claimed in this respect, and was admissible. In the remarks offered it was said that the respondent and his wife should live together and she should go back and help take care of the child; that the wife should go back home and take care of the girl. The respondent is asked by the court: "Are you willing to take your wife back and the child?" and he replied, "I could not do any better than I have before; the trouble is jealousy with the children." The court then asked him, "Are you willing to go and do as you have done?" and he replied, "Certainly." Thereupon the following colloquy occurred between Mr. Enright and the court: *Mr. Enright:* "What about this child drifting about from place to place?" *Court:* "The mother should go home and take care of her child."

Immediately after this remark by the court, the petition for a divorce was dismissed and the injunction dissolved. The evidence tended to show that immediately after the dismissal of the petition and the dissolution of the injunction, the respondent said to her guardian, Mr. Enright. "Now I want my child," and Enright replied, "I have nothing to do with her."

The state seeks to sustain the ruling of the court below in excluding the remarks offered, on the ground that they were no part of the record and had no more legal effect than if made by some other person, and that the respondent had no right to put upon them the construction he claims he did. The question is not whether the remarks were extra-judicial, nor whether they ought to have been construed differently than the respondent claims to have done, but whether they might have been and were, understood by the respondent in such a way as to cause him to understand that the dissolution of the injunction entitled him to the possession of his child. We think the remarks, in view of the circumstances under which they were made, might fairly give him at that time to understand that the effect of the order was as claimed by him, and what occurred between him and Enright in that connection in respect to the child tends to show that, from what was then said by the court, he then understood the effect of the order to be as claimed by him on trial.

The entire remarks offered tended to convey the idea that the respondent had been in the right in respect to his wife and this child from the beginning of his domestic troubles.

That part thereof, preceding what I have quoted, the majority of the court hold to be inadmissible. It seems to me that this is too narrow a construction of the offer. That part preceding what I have quoted, tended to characterize and give added force to what followed, and the remarks taken as a whole, must have conveyed the idea to the respondent that the child was to go back home, and therefore that he was entitled to the possession of her from that

time forth. I would hold that it was error to exclude the evidence embraced in this offer, and reverse the judgment, set aside the verdict and remand for a new trial.