## State of Vermont v. Joseph N. Bartlett

[407 A.2d 163]

No. 228-78

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed September 10, 1979

*Mark J. Keller*, Chittenden County State's Attorney, *Norman R. Blais*, Chief Deputy State's Attorney, and *Susan R. Via*, Deputy State's Attorney (On the Brief), Burlington, for Plaintiff.

*Blum Associates, Inc.*, Burlington, for Defendant.

**Larrow, J.** Tried by jury, defendant Bartlett was acquitted of utterance of a forged instrument (13 V.S.A. § 1802) and convicted of passing counterfeit currency (13 V.S.A. § 1804). He appeals his conviction. Two rulings are assigned as error. The trial court denied defendant's post-trial motion for mistrial or new trial, and after denying full cross-examination of the State's principal witness, one Burns, refused to strike his entire testimony.

In many respects the trial was not a model one. The events upon which the post-trial motions were based cannot be briefly summarized. They were brought out in questioning by court and counsel in chambers, during the trial, after a court officer reported to the judge a conversation with part of the jury. During a recess just before closing arguments, the jury was taken for a walk. The court officers allowed them to break up into two groups, each with an officer and in sight of each other. One juror approached a court officer and asked if a juror in the other group could be excused. The officer stated he was not allowed to talk about the case, but finally permitted the juror to go on. The juror related that a juror named Smith had indicated that her opinion, one of guilt, had been formed a day or two earlier. Several other jurors voiced their dissatisfaction with Smith's behavior and lack of maturity. The other group was told that complaint had been made to the court officer. He, in turn, reported the incident to the court.

The court questioned the officer in chambers, with both attorneys declining to pose further questions. Defense counsel asked for a chance to consult his client, and the court, on its own initiative, brought up the question of mistrial. It indicated reluctance to grant one even if it were sought, preferring to postpone decision until after verdict. Counsel then consulted the defendant, and was asked whether he had anything more before proceeding. He answered in the negative, that he was prepared to proceed along the lines out-

lined by the court. The court, in chambers, then questioned juror Smith, who denied any discussion of the case, and the other jurors and alternates. All indicated juror Smith had said her mind was made up, although only one said she had stated how. There were numerous criticisms of her general conduct, although all but one stated it would not affect their verdict. That juror, on cross, explained she really meant that juror Smith would disturb the deliberations, not that Smith would make up her mind for her or affect her judgment.

After all the questioning, counsel agreed that juror Smith should be removed, but defense counsel stated he wanted it understood he was not waiving any rights to mistrial because of the problem. He made, however, no such motion at the time, and the court stated that it would "take up and deal with seriously" any post-trial motions and rule on them at that time "as I saw appropriate." The following colloquy ensued:

| | |
|---|---|
| Judge: | "Let's assume—Are you asking for a mistrial now, without in any way waiving your right to present it at a later time?" |
| Defense Counsel: | "I would prefer to go forward if Jacqueline Smith were by stipulation removed and Lucienne Trahan—" |
| Judge: | "I make the ruling we are going to take up post trial any questions of mistrial, given that set of affairs." |

Juror Smith was then removed and an alternate, Trahan, seated. A short instruction on the matter was given, without objection. Following arguments and general instruction, the described verdicts were returned. Post-trial motions were seasonably filed and denied, which included the stated grounds of appeal. The motions did not claim that any mistrial had been asked and denied (See Form 30, ¶ 8, V.R.Cr.P.) but asked for mistrial as an alternative to new trial on the grounds of court officer and juror misconduct. Limitation of cross-examination of witness Burns and refusal to strike his testimony were urged as grounds for new trial.

■ Defendant's claim of error based upon misconduct of the court officer is quickly disposed of. Completely apart from the question of whether the remarks of the court in chambers and the response of counsel, as quoted, *supra,* could effectively reserve the question for post-trial decision, there was no issue raised on this point on which to reserve decision. Unlike *State* v. *Prime,* 137 Vt. 340, 403 A.2d 270 (1979), the defendant here was kept fully advised of developments and was consulted by his attorney. Counsel chose not to interrogate the officer, and made no intimation he thought his conduct irregular before the post-trial motions were filed. No purported "reservation of rights" could encompass this claim, because it was never advanced. See *State* v. *Babcock,* 51 Vt. 570, 575 (1879).

■ And, even if we reached the merits of this contention, reversal would not be indicated. The test of keeping the jury "together" under 12 V.S.A. § 5808 is not a literal one, requiring each juror to be at all times in the presence of all others. The needs of personal hygiene and separate rooms for sleeping, if nothing else, preclude such construction. The real test is whether or not a juror passes from the attendance and control of the court officer. Our cases, analyzed factually, so indicate. *State* v. *White,* 129 Vt. 220, 225, 274 A.2d 690, 693 (1971); *State* v. *Bogie,* 125 Vt. 414, 417, 217 A.2d 51, 55 (1965); *State* v. *Brisson,* 124 Vt. 211, 212, 201 A.2d 881 (1964); *State* v. *Anderson,* 119 Vt. 355, 361, 125 A.2d 827, 831 (1956); *State* v. *Lawrence,* 70 Vt. 524, 529, 41 A. 1027, 1029 (1898); *Downer* v. *Baxter,* 30 Vt. 467, 473 (1857). This case does not involve such "separation" on the part of any juror.

■ The other act asserted to be misconduct is the conversation between the court officer and members of the panel, claimed to violate the oath contained in 12 V.S.A. § 5808. Such an oath must be given a reasonable construction. *McLean* v. *People,* 66 Colo. 486, 497, 180 P. 676, 680 (1919). It is proper for the jury to communicate its needs through the court officer. *People* v. *Veal,* 58 Ill. App. 3d 938, 958, 374 N.E.2d 963, 985 (1978). The officer should not have permitted the conversation in the first instance, but he did act

appropriately in bringing the matter to the court's attention. The whole transaction, in our view, does not present the capability of prejudice required for reversal. *State* v. *White, supra,* 129 Vt. at 226, 274 A.2d at 694. Not only did defendant fail to make this claim until after trial, but he indicated his satisfaction with the procedure of seating an alternate for juror Smith. And, in total result, the episode accomplished the removal from the jury of a juror very patently hostile to him. He was not prejudiced, but benefitted.

Defendant's claim for reversal on the ground of juror misconduct must also fail, even though we cannot condone the course of action taken by the trial court. It is clear from the record that the defendant did not move for a mistrial when the facts about juror Smith became known, and under ordinary circumstances a waiver of any right to mistrial would result. *Commonwealth* v. *DiPietro,* 367 N.E.2d 811, 822 (Mass. 1977). A defendant cannot gamble on a favorable verdict, but must make prompt objection and motion for mistrial. *State* v. *Roden,* 216 Or. 369, 339 P.2d 438 (1959); *State* v. *Hulet,* 159 Wash. 72, 292 P. 107 (1930); 76 Am. Jur. 2d *Trial* § 1080. In the interests of fairness, however, we have reviewed the matter beyond the question of waiver, since it is at least arguable that the defendant's course of action may have been induced by the sua sponte determination of the trial court that it would reserve mistrial questions for post-trial determination.

Assuming therefore, without so holding, that there was no waiver of juror Smith's misconduct by failure to move for mistrial, no reversal is required. Her bias was found not to have affected the other jurors; if anything, their complaints about it militated in defendant's favor. So did the net result, removal of a hostile juror from the panel. Even before the court indicated its proposed course of action, defendant's counsel had indicated his satisfaction with this removal and the substitution of an alternate. The general questioning elicited a disaffection for juror Smith among the other jurors. Prejudice to the defendant from the actions involved, and the remedies taken, does not appear. Although we have been sensitive to the appearance, as well as the existence, of absolute

jury impartiality, we have recognized that the real test is whether the events had a capacity to influence the result. *State* v. *Woodard*, 134 Vt. 154, 157, 353 A.2d 321, 323 (1976) ; *State* v. *Ovitt*, 126 Vt. 320, 324, 229 A.2d 237, 240 (1967). Reversal is not indicated where events are incapable of "prejudicing the deliberative function of the jury." *State* v. *Grant*, 135 Vt. 222, 226, 373 A.2d 847, 851 (1977). Here, as in *Grant*, a curative instruction was given without objection. The verdict rendered, with acquittal on one charge, is also some indication of impartial treatment. In sum, although we disapprove the reservation of ruling by the trial court, we are convinced that the possibility of prejudice to the defendant does not appear. If any rights to mistrial were adequately preserved, they are insufficient for reversal, and the post-trial motions based upon officer misconduct or juror misconduct were properly denied.

■ The remaining claim of error deals with the testimony of one of the State's nine witnesses, Burns. It was preserved by appropriate trial objections and motion to strike and made a ground of post-trial motion for new trial. Its resolution requires a brief resume of Burns' testimony, admitted by the State to be essential for proof of the charge of passing counterfeit money. On direct examination, Burns testified to defendant's knowledge that the bill in question was counterfeit, and to his identity as the passer. There was no direct corroboration on these issues. The substance of the defense was that Burns was attempting to "frame" the defendant, who was then living with Burns' former paramour and his son by her.

On cross-examination, Burns admitted that some seven months before the offense charged he went to the apartment where Bartlett and Burns' former paramour were living, with a gun and a possible intent to kill them. He did not do so because of the presence of his son. He was then asked about "serious trouble" later that day in Massachusetts, and invoked the Fifth Amendment. Counsel indicated a desire to pursue this line of questioning, to impeach credibility and to show motive in advancing the charges against the defendant. The court permitted inquiry about the incident, but only after the jury was excused. The questions suggested that

on the day in question Burns had picked up a hitchhiker in Massachusetts and beat him severely with a pistol, with resultant pending charges. The court ruled out questioning before the jury on this subject matter, and then denied the defense motion to strike Burns' entire testimony.

When cross-examination before the jury resumed, Burns admitted he left Vermont on the day in question with a gun, picked up a hitchhiker and was later arrested. He admitted being on bail from Massachusetts. He also admitted that he felt the defendant was responsible for an emotional problem he was having at the time in question. He admitted trying to separate the defendant and his former paramour, and that this separation was his motive "in all of this." He admitted that, had the separation occurred, he would have refused to testify.

A leading case on this subject matter is *United States* v. *Cardillo,* 316 F.2d 606 (2d Cir.), *cert. denied,* 375 U.S. 822 (1963). That decision recognizes the fundamental right to confront and cross-examine, but also holds that invoking the Fifth Amendment by the witness upon cross-examination does not always require the striking of his entire prior testimony. If assertion of the privilege does not prevent inquiry into matters about which the witness testified on direct, but merely precludes inquiry into collateral matters which bear only on the credibility of the witness, a motion to strike need not be granted. The underlying consideration is measuring the risk of prejudice to the defendant. An additional factor for consideration is whether the evidence in question is merely cumulative. *Cardillo, supra,* 316 F.2d at 611; *United States* v. *LaRiche,* 549 F.2d 1088, 1097 (6th Cir.), *cert. denied,* 430 U.S. 987 (1977).

In the context of this case, it seems clear that there was little, if any, risk of prejudice to the defendant. It is not clear what the offered evidence would have shown in terms of lack of credibility or an intent to "frame" the defendant, but it could not have been an important piece of evidence compared to that actually introduced. As in *LaRiche, supra,* Burns' own admissions furnished an ample basis for attacking his character and motives, and his bias was frankly admitted, to the point of overt hostility. Nor can we ignore the fact that there

was extensive circumstantial corroboration of many, though not all, of the factual elements of the offense. This the jury was entitled to weigh against the admitted hostility of the witness. We cannot perceive how the excluded evidence, even if admissible, would have subtracted further from his minimal credibility. Prejudice to the defendant does not appear.

*Judgment affirmed.*