**James W. Barrett and Susan W. Barrett v. Adirondack Bottled Gas Corp. of Vermont**

[487 A.2d 1074]

No. 83-178

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed December 21, 1984

*Robert J. Kurrle* and *Michael Carver,* Montpelier, for Plaintiff-Appellant.

*Ralph W. Howe III* and *Robert H. Opel* of *Paterson, Walke & Pratt, P.C.,* Montpelier, for Defendant-Appellee.

**Gibson, J.** Seeking damages for breach of contract, plaintiffs James and Susan Barrett brought suit against defendant Adirondack Bottled Gas Corp. of Vermont following defend-

ant's conversion of apartment units in Montpelier from an underground gas distribution system to on-premises propane-tank storage. The jury found for the defendant and also awarded defendant $1809 on its counterclaim for the price of the tank and for propane delivered. Plaintiff James Barrett appeals,[1] claiming (1) that a question by defendant's attorney concerning a prior conviction of plaintiff was so prejudicial as to require a mistrial, and (2) juror misconduct. Defendant cross-appeals, claiming that the trial court erred in presenting the issue of a breach of warranty to the jury. We agree that a mistrial should have been ordered and, therefore, reverse.

## I.

On the second day of the six-day trial, while cross-examining Mr. Barrett, defendant's counsel propounded without notice to the court or plaintiff the following question:

> Q. Mr. Barrett, I'd like you to refer to page 6 of your deposition, at line 5, do you recall my asking you the following question, "Mr. Barrett, have you ever been convicted of a crime?"

The judge immediately called a recess and, in chambers, twice termed the issue of criminal conviction "unduly prejudicial." He offered, and ultimately delivered, a limiting instruction. The plaintiff did not then request a mistrial, seeking a new trial only after the adverse verdict.[2]

Cross-examination concerning prior convictions in order to discredit a witness is limited to convictions of crimes involving moral turpitude within fifteen years, 12 V.S.A. § 1608,[3] and is subject to the discretion of the trial court. *State v. Gardner,* 139 Vt. 456, 460, 433 A.2d 249, 251 (1981). In

---

[1] Plaintiff Susan W. Barrett was dismissed from the case at the close of the evidence.

[2] The question propounded was not an isolated incident. Earlier in cross-examination, defendant's counsel had questioned the correctness of plaintiff's payroll records by suggesting they had not withstood an I.R.S. audit. After the court sustained an objection to this endeavor, counsel persisted in a manner clearly calculated to place the excluded evidence before the jury: "Isn't it true, Mr. Barrett, you've been audited by the Internal Revenue Service?" Again there was an objection, again sustained.

[3] V.R.E. 609, which went into effect after this case was tried, includes the provisions of 12 V.S.A. § 1608.

exercising its discretion, the court may consider a number of factors in balancing the prejudicial effects of the evidence against its probative value. *Id.* at 460–61, 433 A.2d at 251–52. See *Quazzo* v. *Quazzo,* 136 Vt. 107, 110, 386 A.2d 638, 640 (1978) ("Although relevant, evidence may be excluded on the ground that its probative value is overwhelmed by its probable improper prejudicial effect") ; *State* v. *Batchelor,* 135 Vt. 366, 369, 376 A.2d 737, 740 (1977) (admission of prior convictions not involving moral turpitude for purpose of affecting credibility of criminal defendant is reversible error).

■  Defendant's counsel has never contended that plaintiff's prior misdemeanor assault conviction itself reflected moral turpitude. Rather, counsel contends that the question was designed to show that plaintiff had made a false statement under oath on a previous occasion and that his credibility as a witness was thus suspect. Although the credibility of a witness is always open to attack and wide latitude should be allowed on cross-examination for this purpose, the scope of this latitude is not unlimited, particularly on collateral issues. *State* v. *Berard,* 132 Vt. 138, 147, 315 A.2d 501, 507–08 (1974). The question about plaintiff's prior conviction was collateral to the issues of this case. It forced a suppressive objection from the plaintiff and significantly prejudiced plaintiff in a way that the jury could not have ignored despite any curative instruction.[4]

---

[4] We note here a literary effort by one of the jurors, written prior to jury deliberations and not, apparently, shared with the other jurors. The composition of the poem came at the end of a busy term in which the juror had served on a number of cases, and her observations cannot be limited to this one trial. We do not reach plaintiff's argument of juror misconduct because the case must be retried in any event.

### Self-Serving Evidence

Locked in the jury box,
forced to find fairness
in eyes frightened
by well-kept memories
and forgotten facts.

Sitting, shifting
in swinging seats
with invisible zippers
through our lips.
Peacocks object
and are sustained
by their own symphonies.

Kept men and women,
pulled from other
important lives,
threatened by penalties
and a conscience
of the American Way.

Buzzed to rise, to fall,
told finally to speak
in search of a single truth
from disembodied,
twisted words.

In *Niebyski* v. *Welcome*, 93 Vt. 418, 108 A. 341 (1919), a "manifestly improper" question by an experienced lawyer about defendant's purported out-of-court confession and bribery of witnesses in an unrelated criminal proceeding, wherein he had been acquitted, was held to be so prejudicial as to require a new trial. Although the trial court gave no rebuke or cautionary instruction, *id.* at 422, 108 A. at 343, this Court held that the mere "asking of the question was reversible error." *Id.* at 423, 108 A. at 343. Similarly, in *Paul* v. *Drown*, 108 Vt. 458, 462, 189 A. 144, 146 (1937), counsel's offer to show defendant had not been arrested in an unrelated criminal proceeding "could have been made only with the intent" of presenting inadmissible and prejudicial facts; this was "improper, and such an offense against orderly procedure and good practice that it constitutes reversible error." *Id.* See also *Ronan* v. *J. G. Turnbull Co.*, 99 Vt. 280, 291, 131 A. 788, 793 (1926) (question propounded by counsel regarding defendant's alleged negligent driving on an unrelated occasion so "irreparably prejudiced" defendant's case that any attempt thereafter by the trial court "to charge it out of the case was futile"; "[t]he effective control here was for the examining attorney and not for the court, and the nature and character of the offense against orderly procedure and good practice was such as to constitute in the circumstances reversible error"). Under the circumstances here, an appropriate preliminary step would have been to bring the matter to the attention of the trial court outside the presence of the jury. See V.R.E. 103 (c).

Defendant argues that, because plaintiff failed to move for a mistrial at the time the incident occurred, he acquiesced in the court's handling of the matter and waived any further relief. Plaintiff points to *McBrine* v. *Fraser*, 128 Vt. 514, 516, 266 A.2d 809, 810–11 (1970), in support of his contention that his failure to move for a mistrial or otherwise object to the trial court's actions until after the unfavorable verdict does not bar a subsequent motion for new trial. In *McBrine*, the plaintiff, a passenger in an automobile, sued for injuries caused in a collision with the defendant's car. Defendant's counsel questioned the plaintiff's drinking habits and DWI convictions. While plaintiff's counsel did not except, this Court ruled that the issue was preserved by motion to set aside the verdict and for a new trial. In accord with *Ronan* v. *J. G. Turnbull*

*Co., supra,* the *McBrine* Court observed that irreparable preju-
dice may occur before the court or opposing counsel can inter-
vene:

> [T]he prejudice inhered in the questions themselves. . . .
>
>    The court did not charge the jury to disregard the evi-
> dence in question and, even if it had done so, it would only
> have emphasized the evidence and not have corrected the
> error since the harm, once done, is not necessarily erased
> from the minds of the jury. *State* v. *Garceau,* 122 Vt. 303,
> 307, 170 A.2d 623.

*McBrine, supra,* 128 Vt. at 517, 266 A.2d at 811; accord *Paul*
v. *Drown, supra,* 108 Vt. at 462, 189 A. at 146 ("the prejudice
inhered in the offer itself").

Defendant contends that *McBrine* was overruled by *Rollo* v.
*State,* 139 Vt. 26, 421 A.2d 1298 (1980). We disagree. In *Rollo,*
plaintiff's objection interrupted defendant's closing argument
when counsel began suggesting to the jurors that they, as tax-
payers, would ultimately be liable for any amount awarded to
plaintiff. Following objection by opposing counsel, the trial
court instructed the jury to disregard the remarks, and plain-
tiff made no further objection or motion until after the jury
returned with its verdict. This Court held, in light of the trial
court's action and plaintiff's apparent satisfaction with the
curative instructions, that the trial court's denial of a motion
for new trial was not an abuse of discretion. The Court went
on to say that, having been previously satisfied with the trial
court's handling of the matter, plaintiff would not be heard to
claim error because her gamble on a favorable verdict did not
pay off. *Id.* at 28, 421 A.2d at 1299.

In the instant case, defendant claims plaintiff did not
object because he was "gambling" on the verdict, a practice
this Court has condemned. *Id.; State* v. *Bartlett,* 137 Vt. 400,
405, 407 A.2d 163, 166 (1979). Whether plaintiff was gambling
or not, it is clear that the prejudice caused by counsel's ques-
tion was of such a magnitude as to be irreparable by any cura-
tive instruction the court might have given. In comparison
with the error in *Ronan, supra,* where counsel inquired about
an unrelated driving episode, the question put to plaintiff
herein about a prior criminal conviction had much more dam-

aging implications. Any attempt by the court to cure the damage would only have emphasized it to the further detriment of plaintiff. We hold that where, as here, the effect of counsel's question or comment is so prejudicial that curative instructions cannot correct the error, it is an abuse of discretion to deny a motion for new trial whether or not there has been a prior motion for mistrial. Although an immediate motion for a mistrial would have been desirable, we cannot agree that a tainted verdict should be allowed to stand in the absence of such a motion.

## II.

Because this case must be retried, we address the cross-appeal, wherein defendant claims that the trial court erroneously submitted to the jury the issue of breach of warranty. Defendant contends the issue should not have been given to the jury in view of the contractual provision that "[n]o warranties, expressed or implied other than entered on this contract apply." Plaintiff argues that the issue cannot be withheld from the jury, citing 9A V.S.A. § 2—316(5), which states:

> The provisions of subdivisions (2), (3) and (4) of this subsection [describing methods for excluding warranties] shall not apply to sales of new or unused *consumer goods* or services. Any language, oral or written, used by a seller or manufacturer of *consumer goods* and services, which attempts to exclude or modify any implied warranties of merchantability and fitness for a particular purpose or to exclude or modify the *consumer*'s remedies for breach of those warranties, shall be unenforceable. For the purposes of this section, "consumer" means consumer as defined in chapter 63 of Title 9. (Emphasis added.)

The definition of "consumer," found at 9 V.S.A. § 2451a(a) in chapter 63 of Vermont's Consumer Fraud Act, reads as follows:

> "Consumer" means any person who purchases or contracts for the purchase of merchandise or services not for resale in the ordinary course of his trade or business but for his use or benefit or for the use or benefit of a member

of his household or in connection with the operation of his household.

Whether plaintiff, an absentee landlord buying a propane tank for use in an apartment building, is a "consumer" within the meaning of 9A V.S.A. § 2—316(5) is a question of first impression, requiring us to construe the phrase "his use or benefit" in 9 V.S.A. § 2451a(a). Defendant urges an inference that, in context with the parallel phrases "for the use or benefit of a member of his household," and "in connection with the operation of his household," the phrase "his use or benefit" applies only to transactions of a personal, family or household nature. This interpretation is consistent with the definition of "consumer goods" in 9A V.S.A. § 9—109(1), made applicable to Article 2 by 9A V.S.A. § 2—103(3) ; § 9—109(1) provides:

Goods are

(1) "consumer goods" if they are used or bought for use primarily for personal, family or household purposes.

■■ Goods thus are classified according to the use to which they are put by the consumer. The statute clearly implies that goods used by a consumer for commercial purposes are not "consumer goods." Plaintiff contends that the propane tank was not used for commercial purposes but rather for personal and household use, i.e., cooking and heating in residential apartments. The evidence is undisputed, however, that plaintiff did not live in any of the apartments served by the tank and that the apartment buildings were commercial enterprises owned and operated by plaintiff for business purposes. We therefore hold that plaintiff was not a "consumer" within the meaning of 9A V.S.A. § 2—316(5) and that the contractual disclaimer of warranties was not abrogated by that statute.

*Reversed and remanded.*

Billings, C.J., concurring in part and dissenting in part. I concur with the majority in the result reached in this case, but in view of the fact that the issue of juror misconduct is not reached, I must dissent from including the reference in the majority opinion to the attempted literary effort by a juror in that it is irrelevant and clutters up the Vermont Reports with unnecessary verbiage.