### State of Vermont v. Eddie White

[274 A.2d 690]

No. 33-70

Present: Holden, C.J., Barney, Smith and Keyser, JJ. and Hill, Supr. J.

Opinion Filed February 2, 1971

*James M. Jeffords*, Attorney General, and *William T. Keefe*, Assistant Attorney General, for Plaintiff.

*Gerard F. Trudeau*, Middlebury, for Defendant.

**Keyser, J.** The respondent is charged with unlawful possession of regulated drug, cannabis sativa (marijuana), on November 20, 1969, at Salisbury, Vermont, in violation of 18, V.S.A. § 4224(a). On arraignment respondent entered a plea of not guilty. Bail was fixed and furnished. Subsequently, the respondent filed various motions which the court denied after hearing. A jury was drawn on January 6, 1970, who heard the case on March 10 and 11 and returned a verdict of guilty.

On November 25, 1969, the respondent filed a motion
> "to suppress all evidence and return all things whatsoever unlawfully obtained from respondent or in his possession by law enforcement officials on 20 November 1969, said evidence and things having been obtained unlawfully and in violation of respondent's Federal and State Constitutional rights by means of fraud, deceit, misrepresentation, subterfuge, entrapment, concealment of material facts and by the use of false names and addresses by the said law enforcement officials."

The court, Dier, District Judge, presiding, heard the motion on December 3, 1969. Evidence was taken by the court on the motion but the respondent did not testify. Neither the transcript nor the record show that findings of fact on the motion were made or that the motion was disposed of by the court.

On January 6, 1970, a jury was empanelled to hear the case but trial did not occur until March 10 and 11. At that time due to the illness of Judge Dier, the Court Administrator appointed a member of the Vermont Bar as acting District Judge. Respondent again renewed his motion to suppress, and, after taking evidence out of the presence of the jury, the court denied the motion. The respondent did not testify at any stage of the trial.

The evidence in chief offered at the trial taken in the light most favorable to the state shows the following facts.

On November 20, 1969, a state police officer assigned to narcotics undercover work, while driving his car in Rutland City, saw the respondent hitch-hiking on North Main Street. The respondent thumbed for a ride and the officer picked him up in his car. The officer was driving an unmarked car with Rhode Island plates attached. He had long hair, sideburns and a beard and was dressed in casual clothes with no indication he was a police officer. The officer identified himself by using the fictitious name of Paul Wilbur. He told respondent he was unemployed at a ski resort and was on his way to Burlington. The intention of the officer in giving the respondent a ride was to obtain intelligence information relating to drug activity.

Some conversation ensued between the two parties. The respondent brought up the subject of drugs during which he advised the officer he was going to Salisbury and if he would give him a ride there he, the respondent, would "lay some grass" on him. This meant he would give the officer some marijuana.

The respondent directed the officer to a farm in Salisbury, owned by people named Neifosh, where he claimed to live. The respondent asked the officer to come inside and he would give him the "grass" there. He was also invited in by Mrs. Neifosh and identified himself to her as "Paul Wilbur." White led the officer to his bedroom where he had his belongings. The respondent then opened a bureau drawer and produced a small bag of marijuana. He placed a small amount of the marijuana

on a piece of paper, wrapped it up and gave it to the officer who left the house shortly afterwards.

The officer recognized the substance given to him by White as marijuana and later he confirmed this by making a chemical test at the police barracks.

■ The respondent's first contention is that he was subjected to interrogation by subterfuge while in or under custody or constructive custody of the officer while riding in his automobile without having been advised of his constitutional rights under *Miranda* v. *Arizona*, 384 U.S. 436, 10 A.L.R.3d 974 (1966).

The undisputed testimony of the officer shows that the respondent was being given a ride which he had voluntarily asked for by "thumbing." He further testified that while they were riding the respondent brought up the subject matter of drugs and voluntarily offered to "lay some grass" on him if he would give him a ride to Salisbury.

This situation did not deprive the respondent of his freedom of action in the concept of the *Miranda* case, *supra*, as respondent claims. The officer testified that the respondent was "free to leave the car at any time he requested it." The fact that the respondent did not know that "Paul Wilbur" was a narcotics agent could not generate in him any feeling of coercion either mental or physical. And the respondent was not under investigation by the agent for, or as suspect of, any criminal violations. The record does not disclose any evidence of compulsion to induce the respondent to make self-incriminating statements concerning his possession of marijuana.

We find no testimony to support the theory of custodial interrogation and none is pointed out to us in respondent's brief. The *Miranda* warnings on the facts in this case were not required.

■ The second issue raised by the respondent is whether the officer's purpose in inducing the respondent to admit him to the Neifosh residence by the utilization of a false name, etc. (sic) and other subterfuges was primarily to make a search rather than an arrest.

The respondent's argument on this issue cites law which deals with the situation where property is unlawfully seized, and with unreasonable search and seizure. In making this

argument the respondent assumes that the narcotics agent did enter the house unlawfully and seized the marijuana.

But this is not the situation shown by the evidence. The undisputed evidence is that the respondent expressly invited the officer into the house and voluntarily gave him the marijuana. There is nothing in the evidence indicating any implication that coercion was exerted upon the respondent or that overbearing pressures were responsible for his self-incriminating conduct.

On the facts and circumstances established by the evidence, this case does not fall within the category of an unreasonable search and seizure. There is no evidence that the primary purpose of the agent was to make a search or that he in fact did make, or attempt to make, a search.

The bare fact that the agent was working under an assumed name does not constitute fraud. We have found no affirmative fraud or misrepresentation in the record inducing the respondent to invite the agent into his room and give him the marijuana.

This exception is without merit.

■■ The respondent next argues the issue of entrapment —that is, whether it is a defense raised by a not guilty plea and should have been submitted to the jury. Entrapment has been defined as the inducement of one to commit a crime not contemplated by him, for the mere purpose of instituting a criminal prosecution against him. 21 Am.Jur.2d *Criminal Law* § 143, at 211. Here it cannot be said that the respondent was induced to possess marijuana since he already had it in his possession. Also, entrapment was not an issue in the case as far as the gift of the marijuana is concerned. This exception is without merit.

■ A further claim is made by the respondent that the narcotics agent obtained the marijuana on November 20, 1969, by illegal means contrary to 18 V.S.A. § 4223. The part of the statute material here provides that no person shall obtain or attempt to obtain a regulated drug by fraud, deceit, misrepresentation or subterfuge, by the concealment of a material fact, by the use of a false name or giving of a false address.

The only argument respondent makes in support of his claim is to call our attention to the above statute. Suffice it to say

that there is no prohibition contained in the statute which makes the evidence voluntarily given to the officer inadmissible on this ground as being obtained by illegal means. Illegally obtained evidence is evidence obtained in violation of some constitutional right personal to the respondent. *State* v. *Delaire*, 127 Vt. 462, 464, 252 A.2d 531 (1969). Here, an infringement of such rights of the respondent is not demonstrated by the record.

The respondent contends his rights were prejudiced because a period of sixty-two days elapsed between the selection of the jury and the trial. The respondent argues that this separation was so long and the control of the court over the jury was so dissipated that his constitutional right to a fair trial was prejudiced. Before trial started the respondent moved to dismiss the case on this ground. The court denied the motion.

A similar question was raised in *State* v. *Brisson*, 124 Vt. 211, 201 A.2d 881 (1964), where the time differential between jury selection and trial was ten days. The charge in that case was breach of peace involving an assault. In the instant case the charge is in the very sensitive area of regulated drugs about which there has been a great deal of discussion and publicity.

The record before us is silent as to whether the court gave any cautionary instructions to the empanelled jury before allowing its members to separate and return home as was done in the *Brisson* case. There the court directed the jury "to avoid exposure outside of court to anything pertaining to the case for which they had been selected, so as to prevent prejudice to the interests of the State or the respondent."

In view of the respondent's motion in the case before us, made at the time of trial, the acting district judge asked the jurors to raise their hand if any member had discussed the case with anyone or obtained any information other than what they heard at the time of their selection and whether the publicity of the so-called Chicago seven could influence their deliberations. No hand was raised and the court assumed this to be a negative answer to its inquiries.

Separation of the jury is neither altogether prohibited nor absolutely permissible but rather it is a difference in degree. In misdemeanor cases, like civil cases, the trial

court's discretion in the matter become operative. In exercising this discretion, it is for the trial court to weigh concern for the prompt, orderly administration of criminal law against the possibility of jury prejudice in a given case. *State* v. *Brisson, supra,* 124 Vt. at 213, 214.

■ Respondent's claim of error is only that a separation of sixty-two days is prejudicial to him as a matter of law. The respondent had the burden to demonstrate an abuse of discretion. *State* v. *Hedding,* 122 Vt. 379, 384, 172 A.2d 599 (1961). But when dealing with the integrity of the jury the party claiming the abuse has only to show the existence of circumstances capable of prejudicing the deliberate function of the jury. He is not required to prove that they actually did so. *State* v. *Brisson, supra,* 124 Vt. at 215.

Justice Barney speaking for the Court in the *Brisson* case said at page 215:

> "Events or circumstances which might not be of concern where a jury is under the control and scrutiny of the court itself during trial, might be factors of greater weight when their effect on a jury at large in the community is considered. The mere passage of time between empanelling and service may itself operate to magnify the effect of otherwise minor incidents. Moreover, it is conceivable that a case could arise where the separation was so long, the control of the court over the jury so dissipated by the elapsed time, that this Court might be bound to find prejudice from that fact alone."

■ We are satisfied from the facts in this case that the long lapse of time between the empanelling of the jury overreaches our holding in the *Brisson* case. We hold, as a matter of law, that the trial on March 10 and 11, 1970, by the jury empanelled on January 6, 1970, was highly prejudicial to the rights of the respondent and requires a reversal of the judgment.

Finally, the respondent claims the court erroneously admitted as exhibits the marijuana which he gave to the agent on November 20, 1969. He argues that other persons could have had access to the sample and that it could have been tampered with.

A careful reading of the transcript refutes this claim. On November 24, 1969, the narcotics agent personally delivered the sample to the senior chemist at the New York State Police Laboratory in Albany for a further analysis. The testimony of the agent and chemist shows that the sample was in their custody at all times in a sealed evidence envelope properly identifying it. And the agent testified that the contents of State's Exhibit 3 was the substance he had obtained from White. Ample support appears in the record for the ruling of the court in admitting the exhibit.

*Judgment reversed and cause remanded.*