**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Lewis D. SMITH, Defendant-Appellant.**

**No. 86–5547.**

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 14, 1986.
Decided Feb. 20, 1987.

Carlos M. Recio (Karl W. Pilger; Solomon, Foley & Moran, Houston, Tex., on brief) for defendant-appellant.

William G. Otis, Asst. U.S. Atty. (Constance Harriet Frogale, Asst. U.S. Atty., Alexandria, Va., Kimberly Houston, Third Year Law Student; Henry E. Hudson, U.S. Atty., Alexandria, Va., Barry Breen, Sp. Asst. U.S. Atty., Mary B. Fernan, Third Year Law Student on brief), for plaintiff-appellee.

### INDEX

Page No.

I. The Conviction for the August 22, 1985, Assault on Albert Hertzog is Affirmed ..... 163

II. The Conviction for the October 3, 1985, Assault on Linda Hopcraft is Affirmed ..... 163

III. The Conviction for the October 3, 1985, Intentional Touching of Linda Hopcraft is Reversed .................................. ——

   A. The "Intentional Touching" Conviction Is Reversed Because Congress Did Not Authorize The Airport Administrator To Impose Criminal Sanctions ............. ——

   B. The "Intentional Touching" Conviction Should Be Reversed on the Additional Ground that the Airport Regulation Under Which Appellant Was Convicted Is Unconstitutional (NOT CONCURRED IN BY JUDGES WINTER AND RUSSELL) ............................ 167

Before WINTER, Chief Circuit Judge, RUSSELL, Circuit Judge, and McMILLAN, District Judge for the Western District of North Carolina, sitting by designation.

McMILLAN, District Judge:

### I.

Lewis D. Smith appealed to this court from an order of the United States District Court for the Eastern District of Virginia, Alexandria Division, affirming appellant's conviction by a United States Magistrate on two charges of simple assault in violation of 18 U.S.C. § 113, and one charge of

violating 14 C.F.R. § 159.94(g) (intentionally touching another person without that person's consent while engaged in non-commercial activity).

We AFFIRM both the assault convictions and REVERSE the conviction for "intentionally touching."

I. *The Conviction for the August 22, 1985, assault on Albert Hertzog is Affirmed.*—The evidence clearly supports appellant Smith's conviction of a simple assault on Albert Hertzog. On August 22, 1985, at Dulles International Airport, Smith was manning a table which displayed literature for the International Caucus of Labor Committees (J.App. 142). That organization is associated with Lyndon LaRouche (J.App. 247). Albert Hertzog, an engineer, accompanied by his sister, approached Smith's table. Hertzog and his sister engaged Smith in conversation about a sign which said, "Lasers Kill" (J.App. 142). An argument ensued in which Smith called Hertzog a Soviet agent (J.App. 144). Tempers flared. Smith pushed the table aside and lunged at Hertzog, pushing him several feet and pinning him on the floor (J.App. 150–151, 173, 186–187). Hertzog did not strike nor attempt to strike Smith (J.App. 151). Hertzog suffered minor rib injuries and some bruises.

The prosecution was lodged under 18 U.S.C. § 113, which, in pertinent part, reads as follows:

§ 113. *Assaults within maritime and territorial jurisdiction*

Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows:

\*　　\*　　\*　　\*　　\*　　\*

(e) Simple assault, by fine of not more than $300 or imprisonment for not more than three months, or both.

■ Smith was convicted of simple assault under 18 U.S.C. § 113(e), given a (suspended) sentence of 15 days imprisonment and fined $125.00. Smith's conviction of simple assault on Hertzog is amply supported by the evidence.

Before the district court, Smith moved to set aside his conviction for assaulting Mr. Hertzog (and his other two convictions as well), arguing that he was a victim of selective prosecution by the government because of his political beliefs. The district court denied his motion, and Smith appeals that ruling to this court.

■ We affirm the district court. Smith has shown neither that the prosecution of him was motivated by a discriminatory purpose nor that the prosecution had a discriminatory effect upon the class of speakers of which Smith was a member. Both are required to make a claim for selective prosecution. *Wayte v. United States*, 470 U.S. 598, 608, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985).

■ Evidence introduced by Smith of statements allegedly made to him by the arresting officer were relevant to the issue of discriminatory purpose. However, Smith made no showing that the arresting officer had in any way influenced the United States Attorney who actually made the decision to prosecute. Absent such a showing, Smith's selective prosecution claim rests on mere speculation as to the motives of the prosecutor.

The judgment of the district court as to the assault on Hertzog is AFFIRMED.

II. *The Conviction for the October 3, 1985, assault on Linda Hopcraft is Affirmed.*—On October 3, 1985, Linda Hopcraft, an airline passenger, passed Smith's table at Dulles Airport. A sign at the table said "Star Wars Is Better Than Aids." She stopped and asked Smith what the sign meant. Smith responded angrily, "Oh, people like you never understand what this says" (J.App. 211). Hopcraft persisted with more questions about the sign. This annoyed Smith. He answered one or two questions and then turned to his companion, Seth Taylor, and in a loud voice recited a scatological story about a woman sick with AIDS. Hopcraft, offended by this outburst, began to write down what Smith had said (J.App. 10, 214). Smith told his companion, Taylor, "I think we have an ADL member here. You better start taking her picture" (J.App. 215). Taylor took

Hopcraft's photograph. She asked the two men what organization they represented. They did not tell her.

Hopcraft then saw a pink solicitation permit and reached over to pick it up and look at it (J.App. 216). She testified: "I tried to pick up the card. At that point the defendant grabbed my wrist and my arm" (J.App. 217). Hopcraft left the area and told "Airport Security" about the incident and made a formal written report. She said (J.App. 218) "I was at this point quite upset that he had grabbed me, and, second, ... they had taken my photograph several times and I was still not allowed to know who they were." Hopcraft said again (J.App. 229) that she was "quite upset" that Smith had grabbed her.

Smith was convicted of simple assault, given a (suspended) sentence of 15 days imprisonment and fined $125.00. The above evidence is sufficient to support the conviction under 18 U.S.C. § 113(e) for the October 3, 1985, assault on Linda Hopcraft.

■ Before the district court, Smith argued that he used reasonable force in defending private property against a threatened taking by Ms. Hopcraft, and that his actions were consequently privileged. The district judge found that Smith had no property interest in the solicitation permit which he was required to display publicly, and he also found that the papers Ms. Hopcraft picked up off the table were on display to be picked up by the public. Accordingly, he found Smith's privilege claim without merit. That ruling is supported by the evidence. Smith's conviction for assaulting Ms. Hopcraft is AFFIRMED.

III. *The Conviction for the October 3, 1985, "intentional touching" of Linda Hopcraft is reversed.*—The witness Linda Hopcraft, after talking with "Airport Security," returned to the table where Smith was sitting, accompanied by an airport officer. She told the officer, "They wouldn't even let me look at a piece of paper to find out the name of their organization" (J.App. 219). She picked up a piece of paper from the desk to show the officer what had happened. Again, in the presence of the officer, the defendant appellant Smith

grabbed her wrist. At that point he was arrested for assaulting the witness (J.App. 220). However (perhaps because there was no evidence she was disturbed or put in fear), the defendant was charged only with "intentional touching" under 14 C.F.R. § 159.94(g). He was convicted and ordered to pay a fine of $25.00.

■ Smith argues that the requirement of 14 C.F.R. § 159.94(g) that the person doing the touching be conducting non-commercial activity was not satisfied as to him. The district judge found from the evidence that Smith's duties in his non-commercial activities included dealing with complaining members of the public. That finding is supported by the evidence.

Smith also challenges the constitutionality of the regulation prohibiting those engaged in non-commercial activity at Dulles Airport from "intentionally touching" other persons without their consent. Although the fine imposed on Smith for this count was only $25.00, this conviction presents a serious question.

After reviewing the applicable statutory authority for 14 C.F.R. § 159.94, the court is of the opinion that Congress did not authorize the administrator of the F.A.A. to promulgate criminal regulations.

A. THE "INTENTIONAL TOUCHING" CONVICTION IS REVERSED BECAUSE CONGRESS DID NOT AUTHORIZE THE AIRPORT ADMINISTRATOR TO IMPOSE CRIMINAL SANCTIONS.

■ The following paragraphs present the pertinent statutes and regulations in chronological order, starting with the first enacted or adopted.

In 1950 (64 Stat. 771, Title 49 U.S.C.A. § 2424), Congress authorized the Secretary of Transportation to make rules for the operation of Dulles Airport:

The Secretary shall have control over and responsibility for the care, operation, maintenance, improvement, and protection of the airport, together with the power to make and amend such rules and regulations as he may deem necessary to

the proper exercise thereof: *Provided,* That the authority herein contained may be delegated by the Secretary to such official or officials of the Department of Transportation as the Secretary may designate.

As part of the same statute (64 Stat. 772, 49 U.S.C.A. § 2430), Congress made violation of the Secretary's rules a misdemeanor, subject to penalties of fine and imprisonment:

Any person who knowingly and willfully violates any rule, regulation, or order issued by the Secretary under this subchapter shall be deemed guilty of a misdemeanor and upon conviction thereof shall be subject to a fine of not more than $500 or to imprisonment not exceeding six months, or to both such fine and imprisonment.

In September, 1962, pursuant to 49 U.S.C. § 2430, the following regulation was promulgated:

14 C.F.R. § 159.191 *Penalties*

(a) Any person who willfully and knowingly violates a rule prescribed in this part, including any provision incorporated by reference, or an order or instruction issued or a sign posted under this part, is guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $500, or imprisoned for not more than 6 months, or both.

(b) In addition to the penalties prescribed in paragraph (a) of this section, the Airport Manager may remove or eject any person from the Airport, if that person willfully and knowingly violates a rule prescribed in this Part, or an order of instruction issued by the Manager under this Part or any applicable State or Federal law. The Manager may deny the use of the Airport and its facilities to such a person if the Manager determines that the denial is necessary under the circumstances.

Under 49 U.S.C. § 2430, the administrator has promulgated various criminal regulations governing activity at Washington National and Dulles International Airports. Cf. 14 C.F.R. § 159 et. seq.

More recently, in February of 1980 (94 Stat. 58, 49 U.S.C. § 1359), Congress directed the Secretary to promulgate regulations governing access to airports by individuals or by religious and non-profit organizations for the purpose of soliciting funds or distributing material:

(a) The Administrator of the Federal Aviation Administration (hereinafter referred to as the "Administrator") shall, within 90 days after February 18, 1980, promulgate regulations for airports operated by the Administration to regulate the access to public areas by individuals or by religious and nonprofit organizations (as defined in section 501(c)(3) of the Internal Revenue Code of 1954) for the purpose of soliciting funds or distributing materials.

(b) In promulgating regulations under this section the Administrator shall consider requiring any individual or organization described in subsection (a) to submit an application for a permit to engage in the soliciting of funds or the distribution of materials. In considering such an application the Administrator may require that—

(1) a responsible individual representative of the applicant shall be designated to represent the organization,

(2) each individual participating in any solicitation or distribution will display a proper identification approved by the Administrator,

(3) the number of individuals engaged in any solicitation or distribution at any one time shall not exceed a reasonable number, in keeping with the need for free movement in and operation of the airports as provided for by the permit,

(4) the solicitation or distribution be confined to limited areas and times, and

(5) no individual or organization which holds a permit under this section shall be permitted to—

(A) use sound amplification or display signs (other than signs approved by the Administrator);

(B) intentionally interfere with users of the airport;

(C) engage in the use of indecent or obscene remarks or conduct; or

(D) engage in the use of loud, threatening, or abusive language intended to coerce, intimidate or disturb the peace.

(c)(1) The Administrator shall consider requiring that a copy of a permit (if such is required) be conspicuously posted in the area in which any solicitation or distribution is permitted.

(2) *The Administrator shall consider whether revocation of approval for any permit if required and approved under this section should occur for any violation of any rule or regulation promulgated hereunder.* (Emphasis added.)

(d) Regulations intended to be promulgated under this section shall be submitted to Congress within 30 days after February 18, 1980.

As directed by Congress, the administrator of the F.A.A. promulgated the following rule in May of 1980 (C.F.R. § 159.94):

*C.F.R. § 159.94:* Prohibited conduct relating to non-commercial activity.

No person may conduct *non-*commercial activity (emphasis added):

\*      \*      \*      \*      \*      \*

(g) By intentionally touching or making physical contact with another person unless that other person has consented to such physical contact.

14 C.F.R. § 159.94 was then placed among the other regulations promulgated pursuant to 49 U.S.C. §§ 2424 and 2430. Placing 14 C.F.R. § 159.94 in this context made it enforceable by the criminal sanctions of 14 C.F.R. § 159.191.

However, in 1980 when Congress enacted 49 U.S.C. § 1359 directing the F.A.A. administrator to promulgate regulations governing the access to airports by religious and non-profit groups, Congress did not mention the imposition of *criminal* sanctions for the violation of those regulations. The only sanction mentioned by Congress with respect to religious and non-profit groups is found at 49 U.S.C. § 1359(c)(2) and reads as follows:

The Administrator shall consider whether revocation of approval for any permit if required and approved under this section should occur for any violation of any rule or regulation promulgated hereunder.

Thus, from the face of 49 U.S.C. § 1359, the only sanction contemplated by Congress appears to have been the revocation of the permit of any person or organization found to be violating the regulations.

The authority of an administrative agency to promulgate a regulation is limited by the statute authorizing the regulation. *Morton v. Ruiz,* 415 U.S. 199, 231–232, 94 S.Ct. 1055, 1072–1073, 39 L.Ed.2d 270 (1974). "When Congress passes an Act empowering administrative agencies to carry on governmental activities, the power of those agencies is circumscribed by the authority granted." *Stark v. Wickard,* 321 U.S. 288, 309–310, 64 S.Ct. 559, 570–571, 88 L.Ed. 733 (1944); *Kent v. Dulles,* 357 U.S. 116, 129, 78 S.Ct. 1113, 1119, 2 L.Ed.2d 1204 (1958).

Under 49 U.S.C. §§ 2425 and 2430, of course, the F.A.A. administrator possesses plenary authority to promulgate regulations punishable by criminal sanctions. However, the plenary grant of power under §§ 2425 and 2430 appears to be limited with respect to religious and non-profit groups by the narrow directive in § 1359. "It is a basic rule of statutory construction that a more specific statute will be given precedence over a more general one." *Busic v. United States,* 446 U.S. 398, 406, 100 S.Ct. 1747, 1752, 64 L.Ed.2d 381 (1980); *Preiser v. Rodriguez,* 411 U.S. 475, 489–490, 93 S.Ct. 1827, 1836–1837, 36 L.Ed.2d 439 (1973); *Simpson v. United States,* 435 U.S. 6, 15, 98 S.Ct. 909, 914, 55 L.Ed.2d 70 (1978).

Likewise, in a criminal prosecution, any ambiguity which exists between two statutes is to be resolved by the oft-cited rule that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of leniency." *Busic v. United States,* 446 U.S. 398, 406, 100 S.Ct. 1747, 1752, 64 L.Ed.2d 381 (1980); *Rewis v. United States,* 401 U.S. 808, 812, 91 S.Ct. 1056,

1059, 28 L.Ed.2d 493 (1971); *United States v. Bass*, 404 U.S. 336, 347, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971); *Simpson v. United States*, 435 U.S. 6, 15, 98 S.Ct. 909, 914, 55 L.Ed.2d 70 (1978).

Applying these two principles to this case leads to the conclusion that § 1359 was not intended to be enforced against religious and non-profit groups by criminal penalties.

In February of 1980, Congress specially considered the narrow problem of access to federally managed airports by religious and non-profit organizations for the purpose of distributing materials and soliciting funds. 1980 U.S.Code Cong. and Adm. News, pp. 89, 126. Congress directed the administrator of the F.A.A. to promulgate within 90 days regulations governing access to airports by religious and non-profit groups conducting such activities. Congress did not include fines and jail sentences in its list of permissible sanctions. Congress very specifically instructed the administrator what it envisaged the content of the regulations should be. By enacting 14 C.F.R. § 159.94 to go beyond the language of § 1359, the administrator has exceeded his congressional mandate.

Appellant's conviction under 14 C.F.R. § 159.94 is REVERSED.

B. THE "INTENTIONAL TOUCHING" CONVICTION SHOULD BE REVERSED ON THE ADDITIONAL GROUND THAT THE AIRPORT REGULATION UNDER WHICH APPELLANT WAS CONVICTED IS UNCONSTITUTIONAL (NOT CONCURRED IN BY JUDGES WINTER AND RUSSELL)

Chief Judge Winter and Judge Russell concur in result based upon the statutory grounds only. They do not believe the court should reach or decide the constitutional question. With all respect, I think we should.

It is true that the decision might rest upon the statutory grounds alone. There is a constitutional theory that courts should avoid a constitutional basis for decision when less lofty grounds are available. That theory may well be "more honoured in the breach than the observance." W. Shakespeare, *Hamlet*, Act I, scene iv. *See* the oft-cited case of *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688 (1936), where Justice Brandeis wrote at length about avoiding constitutional decisions, but *concurred* in the decision *in that case on the merits* of the constitutional question then before the court. The *Ashwander* theory is by no means mandatory, nor clear on a particular set of facts; in a recent opinion, *United States v. Albertini*, 472 U.S. 675, 105 S.Ct. 2897, 2900–04, 86 L.Ed.2d 536 (1985), Supreme Court Justice O'Connor, writing for a 7–2 majority, has criticized the tendency of courts to avoid a constitutional question by straining the construction of a statute.

There are also *ad hoc* reasons why the *Ashwander* theory should not be followed here.

In the first place, the statutory reasons for decision outlined above were neither briefed by counsel nor argued at the appellate hearing. Though they are valid, they may well come as a surprise to the lawyers.

In the second place, the *constitutional* grounds for decision *were* briefed and argued on appeal by counsel; the constitutional basis of decision is stronger than the statutory basis; and the challenged regulations *do* violate the First Amendment.

In the third place, the *Ashwander* theory has typically been enunciated in cases where by interpretation the Court has already determined that the statute under attack is *valid* and does *not* infringe the Constitution. *Ashwander supra; Crowell v. Benson*, 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932); *Siler v. Louisville & Nashville R.R. Co.*, 213 U.S. 175, 193, 29 S.Ct. 451, 455, 53 L.Ed. 753 (1909). Where the statute under attack does not infringe the Constitution, there is no reason to advise the legislature how the statute might be rewritten, if at all, to comply with the Constitution.

That is not our case. Here we have agreed that the *regulation* under attack is *in* valid because it was not authorized in the congressional delegation of authority to

the administrator. If this court does not address the constitutional question, the administrators are free to mend their licks by asking Congress to modify the text of the statute to say that it does authorize criminal punishment of non-commercial but not commercial speech. Even in cases like *Kent v. Dulles*, 357 U.S. 116, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958), where courts have struck down regulations by means of statutory construction, they have articulated their constitutional concerns.

Finally, free speech is protected because it is essential to human liberty; when it is threatened courts should be willing rather than reluctant to rely on the Constitution itself as the source of that protection. The Constitution is, after all, the "Supreme Law of the Land."

I therefore believe the court should reach and decide the constitutional question, and that, for reasons stated below, the regulation under which appellant was convicted is unconstitutional.

\* \* \* \* \* \*

Smith contends that 14 C.F.R. § 159.94 and 14 C.F.R. § 159.191, which impose criminal sanctions on the behavior of one class of speakers (non-commercial) in a public forum, but does not impose criminal sanctions on similar behavior by another class of speakers (commercial) in the same forum, violate the equal protection guarantees of the due process clause of the Fifth Amendment.

Although the Fifth Amendment, unlike the Fourteenth, does not contain an equal protection clause, the Supreme Court has treated Fifth Amendment equal protection claims in the same way as those brought under the Fourteenth Amendment. *Bolling v. Sharpe*, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954); *Weinberger v. Wiesenfeld*, 420 U.S. 636, 639, n. 3, 95 S.Ct. 1225, 1229, n. 3, 43 L.Ed.2d 514 (1975); *Wayte v. United States*, 470 U.S. 598, 608, n. 9, 105 S.Ct. 1524, 1531 n. 9, 84 L.Ed.2d 547 (1985).

Government may impose reasonable time, place and manner regulations on public speech; but the Supreme Court has made clear that such regulations must ap-

ply "to all speech *irrespective of content,*" *Carey v. Brown*, 447 U.S. 455, 470, 100 S.Ct. 2286, 2295, 65 L.Ed.2d 263 (1980) [emphasis in original] quoting *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 209, 95 S.Ct. 2268, 2272, 45 L.Ed.2d 125 (1975); *Police Department of the City of Chicago v. Mosley*, 408 U.S. 92, 96, 92 S.Ct. 2286, 2290, 33 L.Ed.2d 212 (1972).

14 C.F.R. §§ 159.94 and 159.191 make criminal certain kinds of behavior by persons engaged in "non-commercial activity." "Non-commercial activity" is defined at 14 C.F.R. § 159.93 to include distribution of handbills and the solicitation of funds— that is, the classic exercise of free speech. *Edwards v. South Carolina*, 372 U.S. 229, 235, 83 S.Ct. 680, 683, 9 L.Ed.2d 697 (1963); *Heffron v. Int'l Soc. for Krishna Consc.*, 452 U.S. 640, 647, 101 S.Ct. 2559, 2563, 69 L.Ed.2d 298 (1981); *Schaumburg v. Citizens for Better Environ.*, 444 U.S. 620, 632, 100 S.Ct. 826, 833, 63 L.Ed.2d 73 (1980).

Non-commercial "speech" is entitled to special protection when it takes place in a public forum. *U.S. Southwest Africa/Namibia Trade and Cultural Council v. United States*, 708 F.2d 760, 766 (D.C.Cir. 1983); *Jews for Jesus, Inc. v. Board of Airport Com'rs.*, 785 F.2d 791 (9th Cir. 1986), *cert. granted, Board of Airport Com'rs v. Jews for Jesus, Inc.,* —— U.S. ——, 107 S.Ct. 61, 93 L.Ed.2d 20 (1986); *Cox v. Louisiana*, 379 U.S. 536, 546, 85 S.Ct. 453, 459, 13 L.Ed.2d 471 (1965).

What is troublesome about these regulations is that members of religious and nonprofit groups are threatened with up to six months' imprisonment and a fine of $500.00 for simply touching a passerby—an action which would not be considered an assault under 18 U.S.C. § 113. On the other hand, those who engage in *commercial* speech— primarily advertising their goods and services at the airport—are subject to no criminal penalties for the same behavior unless it rises to the level of an assault!

If the administrator had applied 14 C.F.R. § 159.94 to both classes of speakers non-discriminatorily, the regulation easily

would have passed constitutional muster. *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 209, 95 S.Ct. 2268, 2272, 45 L.Ed.2d 125 (1975); *Cox v. Louisiana,* 379 U.S. 536, 554, 85 S.Ct. 453, 464, 13 L.Ed.2d 471 (1965). No one has a constitutional right to touch another person without his or her consent. But a serious constitutional question arises when a regulation penalizes one class of speakers for such behavior while failing to penalize a similarly situated class of speakers who engage in that identical behavior.

Had 14 C.F.R. § 154.94 discriminated with respect to the *content* of speech—as opposed to the *behavior* of different classes of speakers—the purposes of the regulation would be subject to strict scrutiny by the courts. *Police Department of Chicago v. Mosley,* 408 U.S. 92, 98–99, 33 L.Ed.2d 212 (1972); *Carey v. Brown,* 447 U.S. 455, 461–462, 100 S.Ct. 2286, 2290–2291, 65 L.Ed.2d 263 (1980).

However, even when the regulation does not discriminate against a particular class of speech, but discriminates against the behavior of a particular class of speaker, the government must show that the discrimination between the two classes of speakers is rationally related to a legitimate state interest. *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *Zobel v. Williams,* 457 U.S. 55, 60, 102 S.Ct. 2309, 2312, 72 L.Ed.2d 672 (1982); *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982).

It is significant that on appeal the government has offered no rationale whatsoever in support of the discriminatory scope of the regulation. Counsel for the United States suggested in argument at the preliminary hearing before the magistrate that the government failed to apply criminal sanctions to impermissible touching by shopkeepers, shoeshine boys and taxi drivers because it assumed that "commercial prudence" would govern their behavior (J.App. 75).

Nevertheless, as this court has noted, "the simple articulation of a justification for a challenged classification does not con-

clude the judicial injury." *Phan v. Comm. of Virginia,* 806 F.2d 516, 521 n. 6 (4th Cir.1986). Although commercial speakers might be different in some ways from religious and non-profit speakers, any such difference is irrelevant unless the behavior by religious and non-profit speakers would threaten the government's legitimate interests in a way the similar behavior by commercial speakers would not. *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 449–50, 105 S.Ct. 3249, 3259–60, 87 L.Ed.2d 313 (1985). The government has the same interest in protecting the public from being touched by taxi drivers and shoeshine boys that it has in protecting the public from being touched by religious and non-profit solicitors.

Likewise, it may be true that a shopkeeper might refrain from touching a potential customer through fear of losing his lease or contract, but it would be equally prudent for a person soliciting for a religious or non-profit cause to refrain from touching a passerby for fear of losing his solicitation permit. Furthermore, neither the shopkeeper nor the person soliciting for religious and non-profit causes is immune from the general prohibition against criminal assault. If the administrator felt the need for further protecting the public using federal airports, no constitutional objections are presented by impartial, non-discriminatory regulation. *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 209, 95 S.Ct. 2268, 2272, 45 L.Ed.2d 125 (1975); *Cox v. Louisiana,* 379 U.S. 536, 554, 85 S.Ct. 453, 464, 13 L.Ed.2d 471 (1965).

The regulation, 14 C.F.R. § 159.94, discriminates against a particular class of speakers in violation of the equal protection guarantees of the Constitution. I would so hold.