# State of Vermont v. John Zaccaro, Jr.

[574 A.2d 1256]

No. 88-386

Present: Peck, Gibson and Dooley, JJ., and Barney, C.J. (Ret.) and Connarn, D.J. (Ret.), Specially Assigned

Opinion Filed March 9, 1990

*John Quinn,* Addison County State's Attorney, Middlebury, and *Jeffrey L. Amestoy,* Attorney General, and *Susan R. Harritt* and *David E. Tartter,* Assistant Attorneys General, Montpelier, for Plaintiff-Appellee.

*Charles R. Tetzlaff* and *Thomas J. Sherrer* of *Latham, Eastman, Schweyer & Tetzlaff,* Burlington, and *Kathleen M. Sullivan* and *Brian Stuart Koukoutchos,* Cambridge, Massachusetts, for Defendant-Appellant.

**Gibson, J.** Defendant appeals from a conviction, following a jury trial, of possession and sale of a regulated drug. We affirm.

## I.

On February 20, 1986, State Trooper Laura Manning and Sergeant David Wemette of the Middlebury Police Department conducted an undercover operation at the home of defendant, John A. Zaccaro, Jr., based on information received from unidentified sources that defendant was selling cocaine from that residence. Trooper Manning, dressed in casual clothes and wearing a body microphone, entered an enclosed, unlocked porch and knocked at a side door which led to the kitchen. Defendant's roommate informed her that Mr. Zaccaro would return in approximately one hour. Returning an hour later, Trooper Manning again entered defendant's enclosed porch and knocked on the door leading to the kitchen. One of the occupants of the house shouted for Manning to come in without any inquiry as to her identity or purpose for being there. She entered the kitchen and asked for John, who identified himself. Manning then asked defendant if she could buy cocaine from him. Defendant answered in the affirmative and invited Manning into the living room, where he displayed a tray of cocaine packets which had been concealed under a sofa in that room. Upon learning that Manning wished to purchase a quarter gram, defendant presented her with one of the packets and took twenty-five dollars in exchange. Manning left defendant's home and delivered the contents of the packet to the state police barracks, where it tested positive for cocaine. That same night, defendant's residence and automobile were searched pursuant to a warrant, and defendant was arrested.

On February 21, 1986, defendant was charged with possession of a regulated drug with intent to sell. Defendant moved to suppress all evidence seized as a result of the search warrant and to dismiss the charges on the ground of selective prosecution. The district court denied the selective prosecution motion, ruling that defendant had failed to demonstrate that he was singled out by the police and State for prosecution. That decision was appealed, but the appeal was dismissed by this Court on procedural grounds. Following suppression hearings, the court excluded the tape recordings taken from the body micro-

phone worn by Trooper Manning, as well as all evidence taken pursuant to the search of defendant's automobile.

Defendant claims his conviction should be reversed because (1) the Vermont Constitution forbids a government agent from entering a private home uninvited and without a warrant to make an undercover drug buy on the basis of rumor alone; (2) the defendant was selectively and improperly targeted for prosecution; (3) the district court's instruction to the jury on entrapment was erroneous; and (4) defendant's right to a fair trial was violated when the court allowed testimony based on suppressed evidence.

## II.

## A.

■ Defendant's first contention, that the Vermont Constitution forbids a government agent from entering a private home uninvited and without a warrant to make an undercover drug buy on the basis of rumor alone, does not invalidate the police undercover operation under the facts of the instant case. At the suppression hearing, the trial court found that:

> the trooper was on the premises with the consent of the occupants including the Defendant. This was based on the following facts: (a) that on each occasion the trooper knocked; (b) that she was invited in; (c) that on each occasion she was treated as a welcomed visitor by the occupants; (d) that she was invited to return after meeting Mr. Pifer and learning that Mr. Zaccaro would not be in until approximately 6:00 P.M.; (e) that she was invited into the house based on her testimony upon knocking the second time; (f) that she was invited into the living room by the Defendant from the kitchen and asked to take a seat; (g) she was then spoken to by the Defendant who then sold her the cocaine; (h) that upon leaving she was cordially treated and told to have a good time.

We will not disturb the trial court's findings of fact unless they are unsupported by the evidence or clearly erroneous. *State v. Malinowski*, 148 Vt. 517, 520, 536 A.2d 921, 923 (1987). Upon a

review of the record, we conclude that the evidence supports the court's findings. The evidence is uncontroverted that Trooper Manning entered defendant's home with the consent of one of the occupants.[1] Further, when she asked defendant if she could buy cocaine, he invited her into the living room and proceeded, without further question, to consummate the sale. On these facts, we are unable to conclude that an illegal search or seizure resulted from Manning's entry into defendant's home. See *Maryland v. Macon*, 472 U.S. 463, 469 (1985); *State v. Connolly*, 133 Vt. 565, 571, 350 A.2d 364, 368 (1975).

In making an independent analysis under Chapter I, Article 11[2] of the Vermont Constitution of whether Trooper Manning's undercover entry into defendant's home amounted to an unreasonable search, we may look for guidance to persuasive holdings from federal and sister-state jurisdictions. See *State v. Wood*, 148 Vt. 479, 482–83 n.2, 536 A.2d 902, 904 n.2 (1987). Moreover, we may "provide more generous protection to rights under the Vermont Constitution than afforded by the federal charter." *State v. Badger*, 141 Vt. 430, 449, 450 A.2d 336, 347 (1982); see *Wood*, 148 Vt. at 482, 536 A.2d at 904 (Fourth Amendment standing analysis rejected).

Probable cause and a search warrant are not required when consent to search is voluntarily given by one authorized to do so. See *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *State v. White*, 129 Vt. 220, 224, 274 A.2d 690, 692 (1971); cf. *Badger*, 141 Vt. at 453–54, 450 A.2d at 349 (father's consent to

---

[1] Defendant briefly contends that Trooper Manning's entry into his enclosed porch was illegal without a warrant. We disagree. There was sufficient evidence indicating that the porch was accessible to any member of the public who wished to contact the residents of the house. Cf. *State v. Pike*, 143 Vt. 283, 288, 465 A.2d 1348, 1351 (1983) (no warrant required when officials restrict movements to driveway visitors could be expected to use).

[2] Article 11 provides:
  That the people have a right to hold themselves, their houses, papers, and possessions, free from search or seizure; and therefore warrants, without oath or affirmation first made, affording sufficient foundation for them, and whereby by any officer or messenger may be commanded or required to search suspected places, or to seize any person or persons, his, her or their property, not particularly described, are contrary to that right, and ought not to be granted.

seizure of defendant son's clothes was tainted by prior, involuntary confession extracted from son). Defendant, however, argues that the State has not shown that the consent in the instant case was given freely and voluntarily, as required under *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968). Specifically, defendant contends that there was no voluntary consent because Trooper Manning did not identify herself as a law enforcement officer or state the true purpose of her visit. We disagree.

▮ We note at the outset that the inquiry in a consent search context is restricted to whether the consent was voluntary, not whether there was a "knowing" and "intelligent" waiver of a constitutional right. *Schneckloth*, 412 U.S. at 241–42; see *Badger*, 141 Vt. at 439, 442, 450 A.2d at 341, 343; cf. *Frazier v. Cupp*, 394 U.S. 731, 740 (1969) (defendant assumed risk that his cousin, with whom he shared a duffel bag, would allow police to search it). Voluntariness is a question of fact to be determined from all of the circumstances surrounding the controversy. *Schneckloth*, 412 U.S. at 233. The State need only show that the consent was given voluntarily, and was not the result of duress or coercion. *Id.* at 248; *United States v. One (1) 1984 Mercedes Benz*, 673 F. Supp. 387, 391 (D. Haw. 1987); see also *Katz v. United States*, 389 U.S. 347, 351 (1967) (Fourth Amendment does not protect that which one exposes to public, even in home or office). Accordingly, consent does not lose its status of being freely and voluntarily given merely because it would not have been given had the person entering the premises identified himself or herself as a law enforcement officer or agent. See, e.g., *State v. Posey*, 40 Ohio St. 3d 420, 429, 534 N.E.2d 61, 69 (1988), *cert. denied*, 492 U.S. 907, 109 S. Ct. 3217 (1989). Indeed, in *White*, where an undercover narcotics officer seeking to obtain information on drug activity picked up a hitchhiker who offered to give the officer marijuana for a ride to his home, we stated:

> The undisputed evidence is that the [hitchhiker] expressly invited the officer into the house and voluntarily gave him the marijuana. There is nothing in the evidence indicating any implication that coercion was exerted upon the [hitch-

hiker] or that overbearing pressures were responsible for his self-incriminating conduct.

On the facts and circumstances established by the evidence, this case does not fall within the category of an unreasonable search and seizure. There is no evidence that the primary purpose of the agent was to make a search or that he in fact did make, or attempt to make, a search.

The bare fact that the agent was working under an assumed name does not constitute fraud. We have found no affirmative fraud or misrepresentation in the record inducing the [hitchhiker] to invite the agent into his room and give him the marijuana.

129 Vt. at 224, 274 A.2d at 692–93.

Defendant directs this Court's attention to *State v. Pi Kappa Alpha Fraternity*, 23 Ohio St. 3d 141, 491 N.E.2d 1129, *cert. denied*, 479 U.S. 827 (1986), in which the Ohio Supreme Court, construing both the United States and the Ohio Constitutions, declined to find free and voluntary consent to a warrantless search where two liquor control agents were invited to enter a fraternity house after fabricating their identities. *Id.* at 144, 491 N.E.2d at 1132. In declining to find consent, the court focused on the scope of the invitation and the conduct occurring inside; the invitation extended by the fraternity was to tour the house, not to consummate an illegal transaction. *Id.*

The primary distinction between *Pi Kappa Alpha* and this case is the scope of the consent given. In *Pi Kappa Alpha*, the two agents gained entrance to the fraternity house by posing as interested individuals seeking a purely legal interaction. The case at bar, however, presents a situation where the undercover police officer actively sought to participate in the illegal activity at defendant's home as part of a police investigation. Thus, the present case is more akin to *Posey*, 40 Ohio St. 3d at 428–29, 534 N.E.2d at 68–69, where the Ohio Supreme Court distinguished *Pi Kappa Alpha* and ruled that consent was freely and voluntarily given when a fraternal organization admitted two undercover agents to participate in illegal gambling activities.

Many federal and state courts, citing *Lewis v. United States*, 385 U.S. 206 (1966), have held that an authorized but deceptive

entry into the home of a suspect, particularly when the entry is ostensibly for an illegal purpose, does not violate any constitutional limitations on government activity. See, e.g., *1984 Mercedes-Benz*, 673 F. Supp. at 391; *United States v. Osorio de Santiago*, 626 F. Supp. 329, 332–33 (D.P.R. 1986), *aff'd*, 828 F.2d 866 (1st Cir. 1987), *cert. denied*, 485 U.S. 969 (1988); *People v. Catania*, 427 Mich. 447, 454, 398 N.W.2d 343, 346 (1986).

In *Lewis*, a federal narcotics agent expressed his desire by telephone to purchase narcotics from the defendant and was invited to the defendant's home to complete the transaction. The United States Supreme Court held that while the home is accorded the full range of Fourth Amendment protections, when that home "is converted into a commercial center to which outsiders are invited for purposes of transacting unlawful business, that business is entitled to no greater sanctity than if it were carried on in a store, a garage, a car, or on the street." 385 U.S. at 211. The case at bar presents such a situation. Defendant invited an outsider, Trooper Manning, into his home to participate in an illegal transaction. Defendant argues that *Lewis* is inapposite because there the government agent had initiated the drug transaction by telephone outside the suspect's home and was then invited inside the home to consummate the transaction. We fail to see any substantive difference where, as in the instant case, the government agent initiated the illegal transaction by knocking at the outside door, entered under a general invitation, and then immediately informed defendant of the nature of her visit.

■■ The record in the instant case reflects that Trooper Manning was told to "come in" after she knocked at the door. There was no further inquiry, only a general invitation to whoever happened to be knocking at the time. Once Trooper Manning was in the house, defendant freely and voluntarily agreed to sell her drugs despite the fact that he did not know who she was. In effect, by opening his home to members of the public, including those interested in procuring drugs, defendant implicitly consented to a "search" of his home within the scope of his invitation. *Lewis*, 385 U.S. at 211. We believe that Article 11, like the Fourth Amendment, protects people, not places. See

*Katz*, 389 U.S. at 351. Article 11 provides "[t]hat the people have a right to hold . . . their houses . . . free from search or seizure," thereby protecting them from unreasonable, warrantless governmental intrusion into affairs which they choose to keep private. But Article 11 does not protect one who, by opening up his or her home to those who wish to take part in illegal activity, exposes such activity to undercover police officers. Cf. *Lewis*, 385 U.S. at 211 (same conclusion interpreting Fourth Amendment). Consequently, we find that there was no error by the trial court when it found Trooper Manning to be on defendant's premises with consent, and that the inclusion of evidence and testimony connected to Manning's undercover entry into defendant's home did not violate the Vermont Constitution's prohibition against unlawful searches and seizures.

### B.

■ Defendant further argues that the undercover operation was not based on probable cause, and therefore was unconstitutional. We cannot agree. Because Trooper Manning's entry into defendant's home and subsequent purchase of drugs were made pursuant to defendant's invitation and with his voluntary consent, probable cause was not required. See *Schneckloth*, 412 U.S. at 219. *State v. Ahart*, 324 N.W.2d 317, 319 (Iowa 1982), does not support defendant's argument. In that case, the court suppressed evidence obtained as a result of the police gaining entry to a suspect's home through a ruse not involving an illegal transaction, where the police investigation was based on mere conjecture. *Id.* The court, however, stated that the evidence would be admissible and the probable cause requirement satisfied where "an undercover agent uses deception to obtain an invitation to a home to consummate an illegal transaction." *Id.* Here, the police gained entry into defendant's home under the pretext of consummating an illegal transaction; in any event, the record contains sufficient evidence that the police investigation was based on more than mere conjecture.

### III.

■ Defendant next argues that he was improperly selected

for prosecution. The appropriate test for selective prosecution is as follows:

> To support a defense of selective or discriminatory prosecution, a defendant bears the heavy burden of establishing, at least *prima facie*, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i. e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights.

*United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974). These two elements must be shown by defendant in order to overcome the presumption that a prosecution is undertaken in good faith. See, e.g., *United States v. Bassford*, 812 F.2d 16, 19 (1st Cir.), *cert. denied*, 481 U.S. 1022 (1987).

Defendant has failed to show or even allege that others similarly situated were not prosecuted. Furthermore, defendant has not produced any evidence or made any allegation that the state's attorney's decision to prosecute him in particular was improperly motivated. In *United States v. Smith*, 812 F.2d 161, 163 (4th Cir. 1987), the court held that absent some evidence that the decision to prosecute, not merely the decision to investigate, was improperly motivated, the defendant's claim of selective prosecution must be denied. The *Smith* court rejected the defendant's selective prosecution argument, noting that the "claim rest[ed] on mere speculation as to the motives of the prosecutor." *Id.*

■ Defendant claims that he was singled out for prosecution because he is the son of a nationally known public figure. While the officers involved acknowledged awareness of the fact that defendant is the son of a public figure, there is no indication that this was a motivating factor in the State's decision to prosecute defendant. Defense counsel did elicit testimony that there had been students at Middlebury College who had been caught with drugs and not prosecuted, but the decisions in

those instances were made by school employees, not by the State. Middlebury College's in-house security procedures may have prevented the information of those suspected in drug trafficking from reaching the authorities, but defendant has offered no evidence that once the police did have information regarding individuals selling drugs in the area, they did not go forward with prosecution. Defendant here, as in *Smith*, has failed to meet his burden of showing that others who were similarly situated were not prosecuted, and that the decision to prosecute him was invidious or in bad faith.

## IV.

Defendant's third argument on appeal is that the trial court's instructions[3] on entrapment were erroneous and prejudicial. Defendant argues that his proposed instructions,[4] which fo-

---

[3] The court's jury instructions on entrapment were, in pertinent part, as follows:

Under Vermont law, a law enforcement official for the purpose of obtaining evidence of a commission of a crime, if they induce or encourage another to engage in such criminal conduct by methods of—or by methods of persuasion or inducement that create a substantial risk that such offense will be committed by persons other than those who are ready to commit it, then the person so induced is not criminally responsible for the conduct.

Although the State has the burden throughout the trial to prove beyond a reasonable doubt each of the essential elements of the crime charged, the Defendant has the burden to prove by a preponderance of the evidence . . . all of the elements of entrapment. Therefore, if the Defendant proves to you by a preponderance of the evidence that the police officers induced or encouraged the Defendant to sell a regulated drug by methods of persuasion or inducement that created a substantial risk that a person otherwise not ready to commit the offense would commit it, then you must find the defendant not guilty of the offense of sale of a regulated drug.

[4] Defendant's proposed instructions on the entrapment defense read, in pertinent part, as follows:

1. The Defendant has raised the defense of entrapment. The purpose behind the entrapment defense is to deter improper police conduct. Furthermore, the focus is to be directed toward the behavior of the police and not on the Defendant's predisposition to commit the offense.

. . . .

3. In Vermont, entrapment occurs when law enforcement officers, for the purpose of obtaining evidence of the commission of an offense, induce or encourage a person to engage in conduct constituting that offense by employing methods of persuasion or inducement that create a substantial risk that such an offense will be committed by persons other than those ready to commit it.

cused on whether he was predisposed to commit the crime, were appropriate and should have been adopted. We disagree.

■■ In *State v. Wilkins*, 144 Vt. 22, 29, 473 A.2d 295, 299 (1983), we adopted the Model Penal Code's objective test regarding entrapment. Under this test, entrapment occurs when the police "'employ[ ] methods of persuasion or inducement [that] create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.'" *Id.* The defendant's proposed instructions, characterized in his brief as an "individualized objective test," in fact constitute a subjective test that focuses on the defendant's characteristics rather than the attendant police conduct. Such a test would contravene this Court's intent in *Wilkins.* "[T]he purpose of the entrapment defense is to deter improper governmental activity in the enforcement of the criminal laws." *Id.* A subjective test such as the one proposed by defendant would lead to different results depending on the identity of the defendant. *Id.* at 27, 473 A.2d at 298. The objective test adopted by this Court in *Wilkins* avoids this anomaly and serves the underlying purpose of the entrapment defense by focusing "'on the conduct of the government agents, and not on the predisposition of the defendant.'" *Id.* at 28, 473 A.2d at 298 (quoting Justice Stewart's dissent in *United States v. Russell*, 411 U.S. 423, 442 (1973)).

The record reveals a charge that is identical to the test adopted by this Court in *Wilkins.* No error appears.

## V.

Defendant next argues that his right to a fair trial was violated when the court allowed testimony based on suppressed evidence. In support of this contention, defendant points to differences in Trooper Manning's testimony at the May 29, 1986 suppression hearing and in her subsequent testimony at trial.

---

4. Methods of persuasion or inducement include, but are not limited to, such things as appeals to: friendship or sympathy, exorbitant monetary gain, and sexual appeal and enticement. In this case, the Defendant has sought to demonstrate he was improperly induced by sexual appeal or enticement.

5. The focus, under the entrapment defense, is on the police conduct and its probable effect on a hypothetical-reasonable person in the Defendant's position. The hypothetical-reasonable person in the Defendant's position in this case is a twenty-two (22) year old male college student who uses cocaine.

Defendant asserts that Manning's statement at the earlier proceeding—that there were "ten to fifteen packets" on defendant's tray—as opposed to her trial testimony—that there were "approximately fifteen packets"—represents testimony derived from suppressed evidence, namely, a photograph taken of the tray after it was recovered from defendant's car. Defendant's assertion that the varying testimony is the result of Manning refreshing her recollection by looking at a suppressed photograph is without support in the record.

Even if the record did show that Manning used a photograph of suppressed evidence to refresh her memory, defendant has failed to show that he was prejudiced in any way. Any error in the admission of that testimony was harmless, and consequently, not reversible error. See *State v. Messier*, 146 Vt. 145, 153, 499 A.2d 32, 39 (1985).

Defendant contends finally that the court "chilled" his right to confront witnesses when it informed counsel that an attempt to impeach Trooper Manning's testimony in order to bolster an entrapment defense might open the door to suppressed evidence. We cannot agree. The court merely stated that it would not allow the State to bring into evidence a suppressed tape recording of the instant drug transaction unless defense counsel attempted to impeach Trooper Manning's version of the dialogue that took place during the transaction. The State wished to introduce the tape to counter defendant's entrapment defense. The court's statement, which actually favored defendant, was not in error. This Court has recognized the propriety of the use of suppressed evidence to rebut unfair inferences raised by defense counsel. *Id.* at 152–53, 499 A.2d at 38. The reluctance of defense counsel to impeach Trooper Manning's testimony was a strategic choice. Further, defendant has not pointed to any potential testimony on his part that was "chilled" as a result of the court's statement.

*Affirmed.*